403 S.E.2d 725

**Phillip CLAY**

v.

**The CITY OF HUNTINGTON, a Municipal Corporation.**

**No. 19720.**

Supreme Court of Appeals of West Virginia.

March 14, 1991.

---

Scott A. Damron, City Atty., Huntington, for City of Huntington.

Robert K. Means, Family Law Master, Huntington, for Phillip Clay.

PER CURIAM:

This is an appeal by the City of Huntington from a decision of the Circuit Court of Cabell County in a wrongful discharge action. On appeal, the City claims that the circuit court's findings were not supported by the evidence and that the court improperly precluded it from presenting its full case during trial. The City also claims that the court failed to consider evidence in mitigation of any potential damage award. After reviewing the record and the arguments of the parties, this Court agrees with the City's contentions and reverses the decision of the Circuit Court of Cabell County.

In 1984, the City of Huntington adopted a set of work rules for city employees.[1] The rules required employees to notify their supervisors if they were to be absent from work unless they had previously supplied a doctor's statement or unless they had otherwise been previously excused from work.

On April 19, 1984, Phillip Clay, a City employee who had previously had a large number of unexcused absences, failed to notify his supervisor that he would be absent because of sickness. His supervisor issued a warning letter, and Clay was not paid for that day. On May 2, 1984, Clay again failed to appear for work without notifying his supervisor. As a result, the supervisor again issued a warning letter and stated that the incident constituted Clay's second offense and suspended him for two days. On August 3, 1984, Clay again failed to report to work or call in. That offense was erroneously treated as a second offense, and Clay received a two-day suspension.

On November 28, 1984, Clay again failed to appear for work or call in. This incident was treated as a third offense under the work rules, and, by letter dated December 14, 1984, the Equipment Maintenance and Operations Supervisor for the City of Huntington suspended Clay without pay, pending termination. Subsequently, the Director of Public Works for the City terminated Clay for the April 19, August 3, and November 28, 1984, absences.

Following his termination, Clay filed a grievance with the City pursuant to a collective bargaining agreement between the City and the American Federation of State, County and Municipal Employees Local 598, Clay's union. That agreement provid-

---

1. A document signed by Phillip Clay and included in the record indicates that on February 19, 1984, he, Clay, received a copy of the rules.

ed for a four-step procedure for the resolution of grievances. At the final step, the procedure was to be submitted to an arbitrator.

The collective bargaining agreement between the City and Clay's union provided that the arbitrator's decision during the grievance procedure was merely advisory and was not binding on the City. The contract further provided that if the City disagreed with the arbitrator's decision, the City was required to publish the reasons for disagreeing in a local newspaper.[2]

While the grievance procedure in Clay's case was being pursued, but before the arbitrator at step four of the procedure rendered his final decision, Clay, on June 11, 1985, instituted the present legal proceeding against the City of Huntington. In his complaint, he alleged that the fourth step of the grievance procedure had not been pursued and that he was being deprived of his right to work under the collective bargaining agreement. He further alleged that the City was acting in bad faith in regard to the grievance procedure.

On July 10, 1985, shortly after the filing of the complaint in the circuit court, the arbitrator rendered his decision in the case. He concluded that termination was too severe as a penalty for the offenses which Clay had committed. After the arbitrator's decision was issued, the City Manager caused the publication, on August 2, 1985, of a summary of the decision and the City's reasons for disagreeing with it. The publication stated:

> On December 17, 1984, Phillip Clay was discharged from his position with the City of Huntington for failure to notify his immediate supervisor at least fifteen minutes prior to the beginning of his work shift. This was his third violation of the Huntington Employee Rules

and Regulations requirement that an employee must notify his immediate supervisor at least fifteen minutes prior to the start of his shift. The Penalty for a third violation is suspension without pay pending termination. A grievance was filed and advisory arbitration was held thereafter. The arbitrator, Philip W. Parkinson, submitted his opinion on July 10, 1985, finding that the grievant was guilty of violation of the employee regulations, but also finding that the termination was too severe of a penalty. He, therefore, was of the opinion that the grievant should be reinstated but not granted back pay.

The employer, having reconsidered its earlier action in light of the Arbitration Proceedings finds that the repeated violations by the grievant warrant the termination. The employer's opinion is that the arbitrator's ruling is contrary to the actual facts of the case.

Meanwhile, the City filed an answer to the complaint in the circuit court and, in spite of the fact that the arbitrator subsequently issued his decision and that the City's objection to the decision was published, the matter proceeded to trial in May, 1987.

Although a transcript of the trial is not in the record, it appears that Mr. Clay himself testified as his sole witness. The City then apparently proceeded to call as its first witness Vernon Walentiny, one of Mr. Clay's former supervisors. At the conclusion of Mr. Walentiny's testimony, the court, according to the City's brief, continued the case in an attempt to facilitate a settlement.

The parties could not agree on a settlement, but the court failed to set a time or date for continuation of the matter. After

---

2. The specific contract language stated:
   If the grievance is still unsettled, the Union may, within fifteen (15) working days after the reply of the City Manager is due, by written notice to the City Manager, appeal to advisory arbitration. The arbitration proceeding shall be conducted by an arbitrator to be selected by the Employer and the Union within seven (7) working days after notice has been given. The decision of the arbitrator

shall be advisory and shall not be inconsistent with the terms of this agreement. The arbitrator shall be requested to issue his decision within thirty calendar (30) days after the conclusion of listening and argument. In the event that the City Manager disagrees with the decision of the arbitrator, both the arbitrator's decision and the City Manager's reasons for not accepting the decision shall be published in the *Huntington Advertiser*.

more than two years, the court, on September 8, 1989, rendered a ruling in favor of Mr. Clay. A principal reason assigned by the court for ruling in Mr. Clay's favor was that he was terminated "because of defendant's failure to publish the reasons for not following the arbitration recommendation as provided by law...."

In the present proceeding, the City claims that the reasons assigned by the court for finding wrongful discharge were not supported by the evidence and that the trial court erred in failing to allow it to complete its defense by precluding it from taking the testimony of its witnesses.

In reviewing the record submitted on appeal, this Court notes that there is included a copy of the notice published in the *Huntington Herald–Dispatch* on August 2, 1985, which has been previously quoted and identifies and summarizes the arbitration decision involved in this case and which also indicates the City's reasons for not following the decision. The existence of this publication suggests that, contrary to the court's findings, there was a public notification of the City's reasons for disagreeing with the arbitrator's decision and that Mr. Clay had adequate notice of those reasons.[3]

The City's principal assignment of error on appeal is that the trial court erred in failing to allow it to complete its defense by precluding it from taking the testimony of its witnesses.

The right to adduce evidence in a legal proceeding is a fundamental right protected by the due process clauses of both the State and Federal Constitutions. As stated in Syllabus point 2 of *Sisler v. Hawkins*, 158 W.Va. 1034, 217 S.E.2d 60 (1975):

"The due process of law guaranteed by the State and Federal Constitutions, when applied to procedure in the courts of the land, requires both notice and the right to be heard." Point 2, Syllabus, *Simpson v. Stanton*, 119 W.Va. 235 [193 S.E. 64].

Further, it has been recognized, in Syllabus point 2 of *Jordan v. Roberts*, 161 W.Va. 750, 246 S.E.2d 259 (1978), that:

Under procedural due process concepts a hearing must be appropriate to the nature of the case and from this flows the principle that the State cannot preclude the right to litigate an issue central to a statutory violation or deprivation of a property interest.

In the case presently before the Court, the circumstances suggest that there were factual points in issue. At the very least, the law recognizes that factors in mitigation of damages must be considered in a wrongful discharge action. *Clarke v. West Virginia Board of Regents*, 166 W.Va. 702, 279 S.E.2d 169 (1981).

In the present case, the Court believes that the record suggests that the facts surrounding Clay's case were confused and incomplete at the time the court rendered its decision and that evidentiary development, as contemplated by *Sisler v. Hawkins, supra,* and *Jordan v. Roberts, supra,* was defeated, and that the City's right to be heard was abridged, when the trial court ruled in the case before the City had an opportunity to develop its case fully.

The judgment of the circuit court is, therefore, reversed, and this case is remanded for further development.

Reversed and remanded.

---

**3.** Although the collective bargaining agreement indicated that the notice should be published in the *Huntington Advertiser,* and it was actually published in the *Huntington Herald–Dispatch,* the Court does not believe that the deficiency was of sufficient significance to justify the deprivation of the City of its right to litigate the substantive issues in the case, particularly when it appears that Mr. Clay had actual notice of those substantive issues, and in view of the further fact that both the *Huntington Advertiser* and *Huntington Dispatch* were papers of general circulation in the Huntington area.