531 S.E.2d 669

STATE of West Virginia ex rel. WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES, CHILD SUPPORT ENFORCEMENT DIVISION, and Kimberly Dawn P., Plaintiffs below,

West Virginia Department of Health and Human Resources, Child Support Enforcement Division, Plaintiff below, Appellant,

v.

MICHAEL GEORGE K., Defendant below, Appellee.

No. 26638.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 25, 2000.

Decided May 5, 2000.

Susan S. Perry, Esq., Acting General Counsel, Bureau for Child Support Enforcement, Charleston, West Virginia, Attorney for Appellant West Virginia Department of Health and Human Resources.

K. Bruce Lazenby, Esq., Beckley, West Virginia, Attorney for Appellee.

Kimberly P., Fayetteville, West Virginia, Appellant, Pro se.

STARCHER, Justice.

In the instant case we find that a natural father has the duty to provide support for his child, despite the fact that another man initially agreed to be listed as the child's father on the child's birth certificate.

## I.

### Facts & Background

We have before us a limited record from only one of several legal proceedings that are involved in the instant case. Certain things we know, and other things we do not know. We believe that we do know enough to make a decision on the issues that are presented to us for decision.

We know that on August 31, 1994, a baby named Robert Early Tyler C. ("the child") was born in Charleston, West Virginia. (We use initials for last names because this is a sensitive case.) The child's mother is Ms. Kimberly P. ("Ms. P.").

At the time of the child's birth, Ms. P. was married to Mr. Michael K. ("Mr. K."). Ms. P. did not list a father's name on the child's birth certificate at the time of the child's birth. A month before the child's birth, on July 24, 1994, Mr. K. had filed a divorce action against Ms. P. in the Circuit Court of Raleigh County.

Two weeks after the child's birth, on October 12, 1994, Ms. P. and Mr. Robert C. ("Mr. C") signed a notarized paternity acknowledgment, pursuant to *W.Va.Code*, 48A-6-6 [1997] [1] stating that Mr. C. was the biological

---

1. *W.Va.Code*, 48A-6-6 [1997] is the most recent version of a statutory provision regarding paternity acknowledgment. This provision was first enacted in 1989 and has been amended three times in the past 10 years—in 1990, 1995, and 1997. (*See* note 4 *infra* for a discussion of the statutory history.) We have viewed changes to this statute as procedural and remedial, and therefore to be applied retroactively. *See, e.g.,*

*Mildred L.M. v. John O.F.*, 192 W.Va. 345, 351–52 n. 10, 452 S.E.2d 436, 442–43 n. 10 (1994); *Kathy L.B. v. Patrick J.B. Jr.,* 179 W.Va. 655, 658 n. 9, 371 S.E.2d 583, 586 n. 9 (1988). A "presumptively retroactive" approach to changes in paternity-related statutes seems appropriate to avoid the constitutionally questionable creation of different classes of children and parents with different rights and duties that depend on arbi-

father of the child. This resulted in the birth certificate of the child being amended by the State Bureau of Vital Statistics to show Mr. C. as the child's father, and to show the child's last name as "C.".

On December 1, 1994, Ms. P. and Mr. K. were divorced by order of the Circuit Court of Raleigh County. The order granting the divorce, agreed to by Mr. K. and Ms. P., stated that there were no children born of the parties' marriage.[2]

We do not know what triggered the subsequent involvement of the appellant State Child Support Enforcement Division ("the Division") in seeking support for the child. Whatever the reason, in March of 1995, the Division instituted a legal proceeding in Raleigh County against Mr. C., to establish Mr. C.'s duty to pay support for the child.

In that proceeding, Mr. C. apparently requested blood testing on the issue of whether he was the child's biological father. Testing was ordered, and the results excluded Mr. C.

as the child's biological father. The Raleigh County action against Mr. C. was voluntarily dismissed by the Division on October 6, 1996. The dismissal order did not address the issue of whether Mr. C.'s name should continue to be listed as the child's father on the child's birth certificate.

The Division then filed a paternity/child support action against Mr. K. in Fayette County—in June of 1997. This is the case in which the instant appeal is taken. The Division's lawyer in the Fayette County action may not have known the details of the earlier legal action that the Division had filed against Mr. C. in Raleigh County.

In the Division's case against Mr. K., the Fayette County court ordered blood testing. The test results showed that Mr. K. was in fact the biological father of the child. By order entered June 30, 1998, the Fayette County court held that Mr. K. was the legal father of the child, ordered Mr. K. to pay

---

trary factors such as when a child was born or when a legal action was taken or begun. We will in this opinion generally refer to and base our opinion on the current (1997) version of the statute, unless by the use of another date in brackets we wish to specifically refer to an earlier version.

The current version of *W.Va.Code*, 48A-6-6 states:

§ 48A-6-6. Establishing paternity by acknowledgment of natural father.

(a) A written, notarized acknowledgment by both the man and woman that the man is the father of the named child legally establishes the man as the father of the child for all purposes and child support may be established under the provisions of this chapter.

(b) The written acknowledgment shall include:

(1) Filing instructions;

(2) The parties' social security numbers and addresses; and

(3) A statement, given orally and in writing, of the alternatives to, the legal consequences of, and the rights and obligations of acknowledging paternity, including, but not limited to, the duty to support a child. If either of the parents is a minor, the statement shall include an explanation of any rights that may be afforded due to the minority status.

(c) Failure or refusal to include all information required by subsection (b) of this section shall not affect the validity of the written acknowledgment, in the absence of a finding by a court of competent jurisdiction that the ac-

knowledgment was obtained by fraud, duress or material mistake of fact, as provided in subsection (d) of this section.

(d) An acknowledgment executed under the provisions of this section may be rescinded within the earlier of sixty days from the date of execution or the date of an administrative or judicial proceeding relating to the child in which the signatory is a party. After the sixty-day period has expired, the acknowledgment may thereafter be challenged only on the basis of fraud, duress or material mistake of fact, upon a finding of clear and convincing evidence by a court of competent jurisdiction. The legal responsibilities, including child support obligations, of a signatory to the acknowledgment may not be suspended during any challenge, except for good cause shown.

(e) The original written acknowledgment should be filed with the state registrar of vital statistics. Upon receipt of any acknowledgment executed pursuant to this section, the registrar shall forward the copy of the acknowledgment to the child support enforcement division and the parents, if the address of the parents is known to the registrar. If a birth certificate for the child has been previously issued which is incorrect or incomplete, a new birth certificate shall be issued.

2. In summarizing the various lower court proceedings involved in the instant case, we omit distinguishing what proceeding occurred before a family master from what occurred before a circuit judge, because this difference is of no significance to our decision.

child support, and ordered that Mr. K.'s name be placed on the child's birth certificate.

Subsequently, in July of 1998, the State Bureau of Vital Statistics, having received the Fayette County court order that required the listing of Mr. K as the child's father, advised Mr. K.'s counsel that there was already a father—Mr. C.—listed on the child's birth certificate. Based on this information, Mr. K. moved the Fayette County court to set aside the court's previous June 30, 1998 order, and to dismiss the Division's case against Mr. K.

On April 14, 1999, the Fayette County court granted Mr. K.'s motion, and vacated its previous order that established Mr. K. as the child's father and that required Mr. K. to pay child support. The Division excepted to this ruling and brings the instant appeal.

## II.

### Standard of Review

■ The circuit court's ruling hinged principally on matters of legal interpretation that we review *de novo.*

## III.

### Discussion

We begin our discussion by reviewing several cases in which this Court has looked at the establishment of paternity by acknowledgment under *W.Va.Code,* 48A–6–6. We then review several of our cases where the issue of blood test evidence has arisen with respect to the determination of legal paterni-

ty. Finally, we apply what we have gleaned from this review to the facts and issues in the instant appeal.

### A.

### *Paternity Acknowledgment Pursuant to W.Va.Code, 48A–6–6*

In *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995), we discussed acknowledgment of paternity pursuant to *W.Va.Code,* 48A–6–6 (the text of the current statute is at note 1 *supra;* the statutory history is discussed at note 4 *infra.*).

■ We stated in *Chrystal R.M.* that the purpose of

... allowing for acknowledgment of paternity by written agreement [under 48A–6–6], is to enable the biological father to acknowledge this fact without going through an expensive and often protracted hearing to establish paternity [by filing an action in court under other statutory provisions].[3]

194 W.Va. at 141, 459 S.E.2d at 418

We have been somewhat reluctant to find that a 48A–6–6 paternity acknowledgment may be successfully challenged. For example, in *State ex rel. W.Va. DHHR on Behalf of Laura F.M. v. Cline,* 197 W.Va. 79, 475 S.E.2d 79 (1996), a paternity acknowledgment pursuant to *W.Va.Code,* 48A–6–6 [1990] was completed by the mother and Mark Edward C., acknowledging that Mark Edward C. was the father of a recently born child. A short time thereafter, the mother filed a child support action against Mark Edward C., and

**3.** Other jurisdictions recognize the establishment of paternity by acknowledgment, taking varying approaches to the procedure, depending on the particular facts and controlling statutory language. *See, e.g., Womack v. Cook,* 634 So.2d 322 (Fla.App.1994); *Sullivan v. State,* 38 Conn.Supp. 534, 453 A.2d 91 (1982). In *Dept. of Social Services v. Franzel,* 204 Mich.App. 385, 516 N.W.2d 495 (1994), *app. den.,* 447 Mich. 995, 525 N.W.2d 456, the court permitted the impeachment of an acknowledgment of parentage by blood tests. In *Stephenson v. Nastro,* 192 Ariz. 475, 967 P.2d 616 (1998), the court held that a mother's untimely allegation that her signature on a paternity acknowledgment was forged did not establish fraud, duress, or a material mistake of fact that would overcome the best interests of

the child and invalidate a paternity established by acknowledgment. In *B.O. v. C.O.,* 404 Pa.Super. 127, 590 A.2d 313 (1991), the court found fraud and set aside an acknowledgment of paternity. In *Wachter v. Ascero,* 379 Pa.Super. 618, 550 A.2d 1019 (1988), the court found that a paternity acknowledgment could not be challenged because of equitable estoppel. In *Leach v. Alford,* 63 N.C.App. 118, 304 S.E.2d 265 (1983), the court held that there was not an absolute bar to challenging paternity established by acknowledgment; *accord, State v. Mendoza,* 240 Neb. 149, 481 N.W.2d 165 (1992). *But see State ex rel. Fulton County DHS v. Kenneth J.,* 99 Ohio App.3d 475, 651 N.E.2d 27 (1994) (challenge to paternity acknowledgment not permitted).

the family law master refused to order blood tests at Mark Edward C.'s request. The circuit court overruled the family law master, and ordered that blood tests could be performed.

This Court reversed the circuit court, holding that the Legislature had established that "[t]he only way the father's acknowledgment of paternity can be revoked would be through a finding that it was obtained from him under fraud or duress," and that no such duress or fraud had been shown or alleged, 197 W.Va. at 83, 475 S.E.2d at 83.[4]

In *State ex rel. David Allen B. v. Sommerville*, 194 W.Va. 86, 459 S.E.2d 363 (1995), we held that while blood tests may be admissible to challenge the paternity that is established by *W.Va.Code*, 48A–6–6, the challenge must be made in the first instance by a person who has standing to make such a challenge. We said in Syllabus Point 3 that while an alleged biological parent may have standing to challenge paternity that has been established under *W.Va.Code*, 48A–6–6, a grandparent does not have such standing. Additionally, in *Simmons v. Comer*, 190 W.Va. 350, 357, 438 S.E.2d 530, 537 (1993), we stated that a mother would not ordinarily have standing to assert that a father whose paternity was established pursuant to *W.Va.Code*, 48A–6–6 was not the biological father.

### B.

#### Paternity & Blood Tests

■ The State has a broad role in the enforcement of child support, including the establishment of paternity in disputed cases. *Kathy L.B. v. Patrick J.B.*, 179 W.Va. 655, 658, 371 S.E.2d 583, 585 (1988). Courts tend to view claims seeking to bar a paternity claim on the basis of *res judicata* with close scrutiny, in light of the state's interest in natural fathers' support of their children—and more generally, in seeing that children are supported. *Shelby J.S. v. George L.H.*, 181 W.Va. 154, 155–56, 381 S.E.2d 269, 270–71 (1989).

In the instant case, the circuit court ruled that the "biological" paternity of Mr. K. that was shown by the blood test results did not overcome the "legal" paternity of Mr. C. that was established by the *W.Va.Code*, 48A–6–6 acknowledgment.

■ To the extent that the circuit court's ruling in the instant case recognized that blood test results are not a "trump card" that establishes or dictates legal paternity in all cases, the circuit court correctly applied the law that we have developed in our cases.

For example, in *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 387 S.E.2d 866 (1989), we held that while the legal presumption of paternity that arises from birth or conception in wedlock is rebuttable, blood test results that factually exclude the biological paternity of a man who is legally presumed to be a child's father because of the child's birth in wedlock are not necessarily admissible to rebut the legal presumption. We held that if a person has held himself out as the father of a child for such a time that disproof of paternity would result in undeniable harm to the

---

**4.** As explained below, the "fraud or duress" language was added to the statute in 1995, when the requirement of court action in connection with an acknowledgment of paternity was removed.

In the 1989 and 1990 versions of 48A–6–6, an acknowledgment of paternity by a natural father was filed as an application to the circuit court to establish paternity. The circuit court, "if satisfied that the applicant is the natural father and that establishment of the relationship is for the best interest of the child," was to make an order of paternity and the child was thereby made "legitimate." *Id.* Additionally, the statute provided that "a written acknowledgment by both the man and woman that the man is the father of the named child legally establishes the man as the father of the child for all purposes and child support can be established under the provisions of this chapter." *Acts of the Legislature 1989,* c. 154; *Acts of the Legislature 1990,* c. 40.

In 1995, 48A–6–6 was changed to eliminate the requirement of court approval to establish paternity by acknowledgment. Instead of seeking a court order, both parents were to file a notarized acknowledgment with the state registrar of vital statistics. The 1995 revision added this language: "The acknowledgment of paternity is irrevocable from the time of execution, unless a court of competent jurisdiction finds that such acknowledgment was obtained by fraud or duress." *Acts of the Legislature 1995,* c. 88.

In 1997, 48A–6–6 was changed to authorize rescinding of the acknowledgment within 60 days of its execution. The "fraud or duress" grounds for subsequently challenging an acknowledgment were changed to add "material mistake of fact." The language stating that paternity established by acknowledgment was "irrevocable" was removed. *See* 1997 language at note 1, *supra.*

child, blood test results may be ruled to be inadmissible. (We also held that whenever a court faces a claim seeking to disprove a child's paternity, a guardian *ad litem* should be appointed to represent the interests of a minor child.)

Additionally, in *State ex rel. Roy Allen S. v. Stone*, 196 W.Va. 624, 474 S.E.2d 554 (1996), we held that a putative biological father might in certain circumstances be permitted to prove his biological paternity by blood tests, and to seek to rebut the legal presumption of paternity that arises in a child's mother's husband. However, we emphasized that "[t]he preeminent factor in deciding whether to grant or deny blood testing is the child's best interests." *Id.*, 196 W.Va. at 638, 474 S.E.2d at 568. We recognized that in paternity cases involving conflicting bases or presumptions for paternity, a court's decisions "require the exercise of sensitivity and discretion in the analysis of a range of factors that can vary widely from case to case in terms of their applicability and importance." *Id.*, 196 W.Va. at 639, 474 S.E.2d at 569.[5]

### C.

#### *The Instant Appeal*

In the instant case, the Fayette County circuit court reasoned that in the absence of

a showing of fraud or duress leading to Mr. C.'s and Ms. P.'s acknowledgment of paternity under *W.Va.Code*, 48A–6–6, paternity was irrevocably established in Mr. C.[6]

We recognize that this reasoning by the circuit court is consistent with the language of Syllabus Point 2 of *State ex rel. W.Va. DHHR on Behalf of Laura F.M. v. Cline*, 197 W.Va. 79, 475 S.E.2d 79 (1996), which relied on the 1995 version of 48A–6–6, and which states:

> Absent a judicial determination that an acknowledgment of paternity was entered into under fraud or duress, a written notarized acknowledgment by both the man and woman that the man is the father of the named child *legally and irrevocably* establishes the man as the father of the child for all purposes including child support obligations.

(Emphasis added.)

However, in addressing the issues raised in the instant appeal, we find that we must re-examine this syllabus point; and we conclude that upon such re-examination, we must modify it for several reasons.[7]

First, this syllabus point does not take into account the 1997 statutory inclusion of "ma-

---

**5.** For example, in *William L. v. Cindy E.L.*, 201 W.Va. 198, 495 S.E.2d 836 (1997) (*per curiam*), we adhered to the rule established in Syllabus Point 3 of *Michael K.T.*, *supra*, and found that a husband in a divorce proceeding could not use blood tests to disprove paternity, because the husband had acted as the child's father for a number of years during their marriage. In *Nancy Darlene M. v. James Lee M., Jr.*, 184 W.Va. 447, 400 S.E.2d 882 (1990), we held that an adjudication of the paternity of a child by the husband in a divorce decree was *res judicata* as to the husband and wife in subsequent proceedings, and that the circuit court erred in allowing blood tests to be used by the divorced presumptive father to dispute paternity in a child support action. However, in *State ex rel. Cline v. Pentasuglia*, 193 W.Va. 621, 457 S.E.2d 644 (1995), we held that a finding in a divorce decree of paternity by a former husband of a child born in wedlock, whose name was on the child's birth certificate, was not *res judicata* in a support action filed by the child against another putative father—because the child had not been a party to the divorce action.

**6.** We will not discuss the jurisdictional and venue complexities presented by the fact that the Raleigh County court had excused Mr. C. from paying child support, although that court did not remove him as the child's father on the child's birth certificate. With the benefit of hindsight, Mr. C. probably should have been joined in the action against Mr. K. *See* note 7 and 10, *infra*.

**7.** In fairness to the circuit judge whose ruling we are reviewing, and to the other tribunals that have addressed paternity issues regarding this child, our review of the record before us suggests that the Division did not adequately present the issues that the Division raises before this Court, in the lower courts. If this were not a case involving child support, we might say that because the Division did not present its current position to the lower courts, the Circuit Court of Fayette County should not be reversed. But this is a child support case and not a commercial controversy, and we will not attribute the advocate's neglect to the child.

We also note that the limited record before us does not reflect the proper involvement in the instant case of a guardian *ad litem*, an involve-

terial mistake of fact" as an additional named equitable ground that allows a court to consider a challenge to the validity or effectiveness of a *W.Va.Code*, 48A–6–6 paternity acknowledgment. Nor does this syllabus point take into account the fact that the statute was also changed in 1997, to remove the term "irrevocable."

Additionally, this syllabus point does not take into account of or incorporate our consistent and long-standing jurisprudence that recognizes a court's duty to weigh a broad range of equitable and public policy factors in all paternity cases, as discussed at III.B. hereinabove, *see, e.g. State ex rel. Roy Allen S. v. Stone, supra.*

■ There is no doubt that when possible, paternity statutes must be carefully read and applied so as not to unfairly prejudice or burden the fundamental rights of children and parents. If a paternity statute cannot be so read, it is vulnerable to being judicially limited or modified on constitutional grounds. This Court, for example, has modified statutes of limitation in paternity statutes because of equal protection and due process considerations, *see, e.g., State ex rel. S.M.B. v. D.A.P.,* 168 W.Va. 455, 284 S.E.2d 912 (1981); and has held that indigent persons are entitled to state-compensated counsel in paternity proceedings on constitutional grounds, *see State ex rel. Graves v. Daugherty,* 164 W.Va. 726, 266 S.E.2d 142 (1980).

■ Moreover, as a remedial statute (*see* note 1, *supra*), we must be guided in reading *W.Va.Code*, 48A–6–6 by the principle that "[t]hat which is plainly within the spirit, meaning and purpose of a remedial statute, though not therein expressed in terms, is as much a part of it as if it were so expressed." Syllabus Point 1, *Hasson v. City of Chester,* 67 W.Va. 278, 67 S.E. 731 (1910). We believe that the well-established principles of giving paramount concern to the best interests of

the child, and the duty of natural fathers to support their children, are plainly within the spirit, meaning and purpose of *W.Va.Code*, 48A–6–6.

Guided by such an approach to paternity-related statutory construction, we must look closely at the portion of 48A–6–6 [1997] that is directly pertinent to the issue presented in the instant case, which states:

> After the sixty-day period has expired, the acknowledgment [of paternity] *may thereafter be challenged* only on the basis of fraud, duress or material mistake of fact, upon a finding of clear and convincing evidence by a court of competent jurisdiction.

(Emphasis added.)

The statute says that a *W.Va.Code*, 48A–6–6 acknowledgment "*may . . . be challenged* [if there is proof of fraud, duress, or a material mistake of fact]." But the statute does *not* say that upon such proof, the acknowledgment *must* be voided.

■ Rather, while proof of inequitable circumstances like fraud, etc., is stated to be a threshold or prerequisite for *bringing a challenge* to the efficacy of a *W.Va.Code*, 48A–6–6 paternity acknowledgment, proof of such circumstances is not a guarantee that the (permissible) challenge will necessarily be successful.[8] Rather, that ultimate decision should involve the consideration and weighing of all applicable preferences, presumptions and equitable principles that must be applied in paternity cases—including, as a paramount factor, the best interests of the child.

■ For the foregoing reasons, we hold that after the statutory period of time during which a paternity acknowledgment made pursuant to *W.Va.Code*, 48A–6–6 [1997] may be rescinded has passed, proof by clear and convincing evidence of fraud, duress, ma-

*ment that we have held is essential when paternity is an issue before a court. See Michael K.T., supra.* The Division should have insisted on this involvement.

8. We observe that perhaps the most fundamental "rule of thumb" that arises in paternity jurisprudence both in West Virginia and nationwide (*see* note 3 *supra*) is that in most cases, those who

seek to void or avoid the obligations and opportunities of paternity—whether it is a paternity created by law, equity, or biology—have a substantial burden. Conversely, all other things being equal, those who seek to continue, assume, or impose the obligations and opportunities of paternity generally have an easier task.

terial mistake of fact, or similar circumstance raising serious equitable concerns is a necessary prerequisite for a court to entertain a challenge to the validity and effectiveness of such a paternity acknowledgment. In considering the merits of a challenge to a paternity acknowledgment made pursuant to *W.Va.Code*, 48A–6–6 [1997], a court's decision whether to render the acknowledgment invalid or ineffective is to be made only after consideration of all applicable preferences, presumptions, and equitable principles established in our paternity jurisprudence, with the best interests of the child being a paramount consideration. To the extent that Syllabus Point 2 of *State ex rel. W.Va. DHHR on Behalf of Laura F.M. v. Cline*, 197 W.Va. 79, 475 S.E.2d 79 (1996) differs from this holding, it is hereby modified.

▮▮▮ Applying the foregoing principles to the instant case, we conclude that the Fayette County court's reasoning in the instant case understandably but erroneously gave a preclusive or "trump card" effect and validity to Mr. C.'s *W.Va.Code*, 48A–6–6 acknowledgment of paternity.

The correct approach, under the foregoing principles, would have been that, if grounds were established to consider invalidating Mr. C.'s *W.Va.Code*, 48A–6–6 paternity by acknowledgment, the court should have engaged in a weighing process.

We conclude that as a matter of law, the Fayette County circuit court did have grounds to consider a challenge to the validity of Mr. C.'s *W.Va.Code*, 48A–6–6 paternity. One ground, of course, was that his paternity had already been voided (at least as to establishing his duty of child support) by another

circuit court. Additionally, the blood test results and the circumstances of the Mr. K./Ms. P. relationship suggested strongly that Mr. C.'s acknowledgment of paternity may have been based on at least a material mistake of fact.

Looking next to the weighing process, we recognize that the circuit court in essence faced a conflict between two competing paternities—in the context of a claim brought by the state for a minor child seeking support by the legal "father" of the child (as determined by the court.) [9]

Supporting a finding of Mr. C.'s paternity is (1) Mr. C.'s presumably voluntary (but also quite possibly mistaken) *W.Va.Code*, 48A–6–6 acknowledgment; and (2) the consequent fact that he was named as the child's father on the child's birth certificate. Mr. C.'s paternity is undermined by (1) biological fact; (2) by his relatively prompt action to dispute his paternity; and (3) by the ruling of the Raleigh County court that he does not owe child support.[10]

Supporting a finding of Mr. K.'s paternity is (1) the child's birth to a woman to whom he was married at the time of the child's birth; and (2) biological fact. Mr. K.'s paternity is undermined by (1) his being excluded in the divorce action as the child's father; and (2) by some delay, apparently not attributable to Mr. K., in the bringing of the paternity claim against him.

▮▮▮ Under our cases, it is significant that there was relatively little time (6 months or so) between Mr. C.'s initial acknowledgment of paternity and his contesting it. It seems unlikely that Mr. C. had held himself out as the child's father to such an extent as to

---

9. It has been said that courts that face conflicting presumptions of paternity should favor "the presumption which on the facts is founded on the weightier considerations of policy and logic . . . ." Deborah A. Ellingboe, "Sex, Lies, and Genetic Tests: Challenging the Marital Presumption of Paternity Under the Minnesota Parentage Act," 78 *Minn.L.Rev.* 1013, 1026 (1994.).

10. Of course, Mr. C. was not before the Fayette County court whose ruling we are reviewing, and therefore he is not before this Court. It is an open question as to what could be done to seek to impose the duties of paternity on Mr. C., if we were to ratify the Fayette County decision that

relieved Mr. K. from those duties on the grounds that the child already has a father in Mr. C. We assume, however, that if this Court were to uphold the Fayette County court's ruling that relieves Mr. K. from any duty to support his biological child on the ground that Mr. C. is the child's legal father—that further proceedings against Mr. C. would probably succeed in the long run. Barring some unforeseen intervening event, one of these two men is likely going to be held responsible for child support. Therefore, even though Mr. C. is not presently before a court, this case is fairly seen as a conflict between two paternities.

make permitting Mr. C. to deny paternity inequitable because such denial would be undeniably harmful to the best interests of the child. *See Michael K.T., supra.* We cannot say from the record before us that Mr. C. acted in such a way that he should have been equitably estopped from disputing his paternity.

■ Mr. K. argues that it is unfair that Mr. K. should have to assume the responsibilities of legal paternity. Mr. K. claims that Ms. P. "did everything she could" for several years to hide the parentage of the child from Mr. K. Assuming *arguendo* that this is the case, we doubt that such "concealment" behavior by a mother, even if inequitable *vis-a-vis* the father, can ordinarily be attributed to an innocent child so as to weigh substantially on behalf of freeing a biological father from the responsibilities of supporting his offspring.

■ Mr. K. points to the implicit decree of non-paternity ("no children born of the marriage") that the Raleigh County court issued in connection with Mr. K.'s and Ms. P.'s divorce. But like Ms. P.'s alleged concealment, our cases have consistently held that such decrees or determinations are not *res judicata* and do not inure to the benefit of a putative parent in an action brought *on behalf of the child* to obtain support. *See, e.g., Shelby J.S., supra.*

Finally and most importantly, Mr. K.'s marriage to the child's mother at the time of the child's birth, and the fact of Mr. K.'s factual, biological parentage, are both weighty factors. *Cf. Kathy L.B. v. Patrick J.B.,* 179 W.Va. 655, 658, 371 S.E.2d 583, 585 (1988); *Shelby J.S. v. George L.H.,* 181 W.Va. 154, 155–56, 381 S.E.2d 269, 270–71 (1989); *Kessel v. Leavitt,* 204 W.Va. 95, 199, 511 S.E.2d 720, 824 (1998); and *Michael K.T. v. Tina L.T.,* 182 W.Va. 399, 387 S.E.2d 866 (1989).

We could remand this case to the circuit court for a final weighing of the applicable factors that we have discussed. But we believe that the outcome of such a weighing is foreordained, and it is in the child's best interest for paternity to be settled sooner rather than later.

We conclude that the Fayette County court erred in setting aside its initial determination that Mr. K. is the legal father of the child Robert Early. We affirm that initial determination. This case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.