542 S.E.2d 925

STATE of West Virginia CHILD SUPPORT ENFORCEMENT DIVISION, on Behalf of William C. YOUNG, DOB 05–23–93, and Tia Marie Young, Plaintiff Below, Appellant,

v.

Edward Russell PRICHARD, Defendant Below, Appellee.

No. 27625.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 19, 2000.

Decided Dec. 11, 2000.

---

Susan S. Perry, Esq., Assistant General Counsel, Bureau for Child Support Enforcement, Huntington,West Virginia, Attorney for Appellant.

Gene Gardner, Esq., Gardner & Cyrus, Huntington, West Virginia, Attorney for Appellee.

PER CURIAM:

The West Virginia Department of Health and Human Resources, Bureau for Child Support Enforcement (BCSE), appeals the May 18, 1999 order entered by the Circuit Court of Cabell County, West Virginia, which dismissed a paternity action against the appellee, Edward Russell Prichard. We believe the action was wrongly dismissed and, therefore, reverse.

I.

Tia Marie Young and Edward Russell Prichard were married on October 24, 1992. Young apparently was pregnant at the time, a fact Prichard says was unknown to him. The couple separated after approximately two months. Prichard filed for divorce, claiming, inter alia, that "[n]o children were born of the marriage but Plaintiff is informed and believes that Defendant is now pregnant and that said conception took place prior to the marriage of Plaintiff and Defendant and that Plaintiff is not the father of said unborn child." Young filed an answer pro se "admit[ting] all the allegations contained in the Complaint." Young was a minor at the time; therefore, her mother signed the answer as her next friend.

Young and her mother failed to appear at the final hearing. The family law master's recommended order proposed "[t]hat the paternity of the expected child is to be determined at a later date." The recommended order was incorporated into the court's final order which specifically stated,

2. Although the Defendant is presently pregnant with child the Plaintiff is not admitting paternity at this time. If it should be later determined that the Plaintiff is in fact the father of the child then, and in such event, the child should not be removed from the jurisdiction of this Court to another state for domiciliary or residential purposes without the prior order of this Court.

The divorce was granted on March 11, 1993.

Young married Ronnie Laney. During the duration of this brief marriage, which lasted approximately three months, William C. Young was born. The birth certificate states, "Mother refused to list Father's name (Husband)." No documents from this divorce were submitted on appeal; however, in his brief, Prichard states that the order of divorce dissolving the marriage between Young and Laney does not address paternity of the child.

Young received public assistance for the child. On March 25, 1998, BCSE filed a complaint against Prichard to establish paternity, child support, and reimbursement support. Prichard filed a motion to dismiss the complaint. The parties appeared before the family law master on June 4, 1998. During the hearing, the family law master questioned whether paternity was determined in the Young–Laney divorce. Young responded that paternity was not determined at that time. After reviewing the Young–Laney divorce file, the family law master discovered that paternity was addressed but not determined. The divorce order simply stated that Laney did not admit paternity; but, if he was later determined to be the child's father, then the child could not be removed from the State for domiciliary purposes without court approval.

The family law master found that Prichard specifically alleged in his divorce complaint that the child was not his and Young specifically admitted the same. The law master also noted that Laney is presumed to be the father since Young was married to him at the time the child was born. The family law

master recommended dismissal of the complaint.

BCSE filed exceptions to the family law master's decision. Following a hearing on the exceptions, the circuit court affirmed the recommended order of the family law master. During the hearing, the circuit court also explored whether a paternity action had been instituted against Laney. Counsel for BCSE stated, "Not yet, Your Honor. We thought that it was appropriate to proceed against Mr. Prichard first based on the divorce order, and if he was excluded, then that man would be pursued secondly." The court ultimately ruled that Prichard was excluded under equitable estoppel by stating:

> 2. That Edward Russell Prichard's Motion to Dismiss be granted on the basis that Tia Marie Young had at least two opportunities, namely the birth certificate of her infant child and the divorce proceeding against Prichard in which to name him as the father of her child, and she failed to do so on both occasions. In addition, five years have lapsed since that time and it would be inequitable to attempt to name Prichard as the father of the child at this point. The Court notes that Prichard has not had any relationship with the child since his birth.

The court's final order was entered on May 18, 1999, wherein the complaint filed against Prichard was dismissed with prejudice. It is from this order that BCSE appeals.

## II.

■ This Court previously articulated the standard of review which applies when a circuit court adopts the findings and recommendations of a family law master. Syllabus Point 1 of *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995), reads as follows:

> In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

We must determine if the family law master and the circuit court correctly interpreted applicable statutes and properly applied the law to the facts. Therefore, a *de novo* standard of review applies.

## III.

On appeal, BCSE contends the circuit court erred in dismissing the paternity action against Prichard because that ruling effectively bastardized the child. BCSE also alleges the court erred in failing to appoint a guardian ad litem to represent the child prior to taking action that could affect the ability to establish a person as the father of the child. Prichard argues that Laney is presumed to be the father of the child, and, therefore, BCSE should have filed a petition to establish child support against the presumed father. Prichard also maintains that the circuit court did not err in failing to appoint a guardian ad litem as this is an action to prove, rather than to disprove, paternity. We believe the circuit court erred in finding that it would be inequitable to attempt to name a father at the time the child was five years old when the West Virginia Code sets forth specific statutes of limitation for paternity cases. In conformity with our case law, we believe the circuit court did not err in failing to appoint a guardian ad litem.

■ We begin our discussion by reiterating that "[t]he duty of a parent to support a child is a basic duty owed by the parent to the child[.]" Syllabus Point 3, in part, *Wyatt v. Wyatt*, 185 W.Va. 472, 408 S.E.2d 51 (1991). This duty is codified in W.Va.Code § 48A–1–2 (1986), which reads in pertinent part, "It is the intent of the Legislature that to the extent practicable, the laws of this state should encourage and require a child's parents to meet the obligation of providing that child with adequate food, shelter, clothing, education, and health and child care." Moreover, "[t]he State has a broad role in the enforcement of child support, including the establishment of paternity in disputed cases." *State ex rel. v. Michael George K.*, 207 W.Va. 290, 294, 531 S.E.2d 669, 674 (2000) (citation omitted).

■ BCSE should not be estopped from pursuing paternity and support for this child.

This Court previously set forth the general principles that should be applied before denying relief under the doctrine of equitable estoppel. In Syllabus Point 3 of *Bradley v. Williams*, 195 W.Va. 180, 465 S.E.2d 180 (1995), this Court determined that " '[e]stoppel applies when a party is induced to act or to refrain from acting to her detriment because of her reasonable reliance on another party's misrepresentation or concealment of a material fact.' Syl. Pt. 2, in part, *Ara v. Erie Ins. Co.*, 182 W.Va. 266, 387 S.E.2d 320 (1989)." More specifically,

> " 'Where a party knows his rights or is cognizant of his interest in a particular subject-matter, but takes no steps to enforce the same until the condition of the other party has, in good faith, become so changed, that he cannot be restored to his former state if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the assertion of the right. This disadvantage may come from death of parties, loss of evidence, change of title or condition of the subject-matter, intervention of equities, or other causes. When a court of equity sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief.' Syllabus Point 3, *Carter v. Price*, 85 W.Va. 744, 102 S.E. 685 (1920); Syllabus Point 2, *Mundy v. Arcuri*, 165 W.Va. 128, 267 S.E.2d 454 (1980)." Syl. pt. 5, *Laurie v. Thomas*, 170 W.Va. 276, 294 S.E.2d 78 (1982).

Syllabus Point 5, *State v. Carl Lee H.*, 196 W.Va. 369, 472 S.E.2d 815 (1996). We have also cautioned that "[t]he doctrine of estoppel should be applied cautiously and only when equity clearly requires it to be done." Syllabus Point 3, *Humble Oil & Refining Company v. Lane*, 152 W.Va. 578, 165 S.E.2d 379 (1969).

▆▆▆ In the case at bar, Prichard was married to Young during or about the time the child was conceived. We are fully aware that Prichard divorced Young and Young married Laney prior to the child's birth.[1] We are also aware that a presumption of legitimacy arises when a child is born or conceived during marriage. *See* Syllabus Point 1, *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 387 S.E.2d 866 (1989) ("In West Virginia, the presumption of legitimacy that arises when a child is born or conceived during a marriage is rebuttable."). Prichard urges us to apply the presumption to Laney. We decline to do so under the unusual facts of this case. Both men were married to Young during her pregnancy. In researching this issue, we found an Alabama case with a similar set of facts.

In *Balance v. Balance*, 261 Ala. 97, 72 So.2d 851 (1954), Louise Balance was married to Robert Gaines. During the brief marriage, she began to have sexual relations with Lucian Balance and became pregnant. She divorced Gaines and five days later married Balance. The child was born during this marriage. When they divorced a year later, Lucian Balance was ordered to pay child support. On appeal, he argued that Louise Balance was married to Gaines at the time of conception, and Gaines was, therefore, presumed to be the legal father of the child, and the case should be governed by the presumption. The Supreme Court of Alabama recognized that an equally strong presumption of legitimacy exists when a child is born during a lawful marriage. The court concluded that the child could be the legitimate child of either Gaines or Balance and refused to apply either presumption.[2]

In the case before us, we do not believe the facts support attaching a presumption, even a rebuttable one, to either of the men Young was married to during her pregnancy. Either man could be the father of the child. Therefore, we do not believe either man will be injured from submitting to blood tests in order that paternity may be determined and support arranged for the child.

Prichard contends BCSE should be estopped from bringing a paternity action

---

1. We pause here to mention that BCSE, in the brief submitted to this Court, failed to apprise us of this important fact. We caution against such practices in the future.

2. The court determined that Balance should pay child support because he admitted the illicit sexual relations, paid for the divorce from Gaines, knew Louise Balance was pregnant when he married her, submitted to the child being named for him, and provided money for the child's maintenance.

against him for several reasons. First, Young refused to name a father on the child's birth certificate. Young swore under oath that no children were born to the marriage when she answered the divorce complaint. Last, Prichard argues that since five years elapsed between the time the child was born and the time BCSE pursued this action, the law and equities are in his favor.

The mother in *State ex rel. v. Michael George K.*, 207 W.Va. 290, 531 S.E.2d 669 (2000), was married at the time of her child's birth but refused to list a father on the birth certificate. Prior to the child's birth, Mr. K. filed for divorce. Both parties agreed to the divorce order which stated that no children were born to the marriage. Two weeks after the child's birth, the mother, Ms. P., and Mr. C. signed a notarized paternity acknowledgment stating that Mr. C. was the biological father of the child. BCSE subsequently became involved and instituted a legal proceeding against Mr. C. to establish support for the child. Blood testing was ordered and Mr. C. was excluded as the child's biological father. BCSE then filed a paternity/child support action against Mr. K. The test results showed that Mr. K. was indeed the biological father of the child.

The circuit court held that Mr. K. was the legal father of the child, ordered Mr. K. to pay child support, and ordered that Mr. K.'s name be placed on the child's birth certificate. Mr. K. appealed, pointing to the implicit decree of nonpaternity and arguing that he should not have to assume the responsibilities of legal paternity. This Court concluded that "our cases have consistently held that such decrees or determinations are not *res judicata* and do not inure to the benefit of a putative parent in an action brought *on behalf of the child* to obtain support." *Id.*, 207 W.Va. at 298, 531 S.E.2d at 678. The same holds true in the case now before us.

■ The passage of time is governed by statute. W.Va.Code § 48A–6–2 (1993) states in pertinent part, "[A] proceeding for the establishment of the paternity of a child shall be brought prior to such child's eighteenth birthday." Also, "[a] paternity proceeding may be brought [ ][b]y the child in his own right at any time after the child's eighteenth birthday but prior to the child's twenty-first birthday[.]" W.Va.Code § 48A–6–1(e)(7) (2000). Obviously, bringing an action within five years of the birth of a child falls well within the statutory guidelines. This Court has also stated that "behavior by a mother, even if inequitable *vis-a-vis* the father, can ordinarily [not] be attributed to an innocent child so as to weigh substantially on behalf of freeing a biological father from the responsibilities of supporting his offspring." *Michael George K.*, 207 W.Va. at 298, 531 S.E.2d at 678. We have consistently held that "[a] child has a right to an establishment of paternity and a child support obligation[.]" Syllabus Point 3, in part, *Cleo A.E. v. Rickie Gene E.*, 190 W.Va. 543, 438 S.E.2d 886 (1993). William Young has a right to the establishment of paternity and to support from his biological father.

■ BCSE argues that the circuit court erred by failing to appoint a guardian ad litem to represent the needs of the child prior to taking action in this case. This Court previously discussed this issue in *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 387 S.E.2d 866 (1989). We said that appointment of a guardian ad litem is necessary "whenever the issue of disproving paternity is raised outside of a proceeding contemplated by W.Va.Code § 48A–6–1." *Id.*, 182 W.Va. at 406, 387 S.E.2d at 873. Clearly this is a case to prove, rather than disprove paternity, which was raised under § 48A–6–1. The circuit court committed no error in this regard.

### IV.

We have determined that no injury will befall Prichard from submitting to blood testing to determine if he is the father of this young child. We, therefore, reverse the circuit court's decision and remand for further proceedings consistent with this opinion.

Reversed and remanded.