566 S.E.2d 887 (2002)
211 W.Va. 528
G.M., Plaintiff Below, Appellee,
v.
R.G., Defendant Below, Appellant,
West Virginia Department of Health and Human Resources, Bureau for Child Support Enforcement, Petitioner Below, Appellee.
No. 30020.
Supreme Court of Appeals of West Virginia.
Submitted February 27, 2002.
Decided June 7, 2002.
*888 G.M., pro se.
Thomas J. Prall, Esq., Buckhannon, for R.G., Appellant.
Darrell V. McGraw, Jr., Attorney General, Kimberly D. Bentley, Assistant Attorney General, Charleston, for West Virginia Department of Health and Human Resources, Child Support Enforcement, Appellee.
PER CURIAM.
The appellant in this proceeding, R.G., in 1997 acknowledged that he was the biological father of a child, C.D.G., and as a consequence, the Circuit Court of Lewis County ordered him to pay child support for the child. The child's mother and the West Virginia Department of Health and Human Resources, Bureau for Child Support Enforcement, subsequently petitioned that the court increase the child support payable. After the petition for the increase was filed, the appellant obtained DNA evidence which conclusively showed that he was not the biological father of C.D.G. Upon learning this, the appellant took the position that he was induced to acknowledge his paternity of C.D.G. by misrepresentations of the child's mother, and he argued that he should be relieved of his child support obligation.
The circuit court, in effect, ruled that the paternity issue had been settled and could not be reopened. In so doing, the court precluded the appellant from introducing evidence relating to the alleged misrepresentations of C.D.G.'s mother.
On appeal, the appellant claims that he should have been allowed to introduce evidence on the alleged misrepresentations, that the circuit court's ruling was erroneous, and that he should be relieved of the burden of paying child support for C.D.G.

I.

FACTS
The record before the Court shows that C.D.G., whose paternity is in dispute, was born on April 20, 1992, and that a birth certificate was issued for her shortly after her birth. That birth certificate indicated that the appellant was the child's father, even though the appellant was not married to the child's mother, G.M. On July 8, 1993, another child, L.D.G., was born to G.M. The appellant does not dispute the fact that he is the father of L.D.G.
On August 15, 1997, a paternity action was instituted in the Circuit Court of Lewis County to compel the appellant to pay child support for C.D.G. and L.D.G. At the time, the appellant was unemployed, and, as a consequence, undertook to represent himself. In his brief in the present proceeding, the appellant states that he did not then have any reason to believe that he was not the father of C.D.G. and that he understood that since his name appeared on C.D.G.'s birth certificate, he could not obtain a paternity test even if desired one. As a consequence, he did not challenge the claim that he was the father of C.D.G.
On December 2, 1997, the circuit court entered an interim order which required the appellant to pay child support for C.D.G. Subsequently, because no father had been named on L.D.G.'s birth certificate, blood testing was ordered to establish that the appellant was, in fact, her father. That blood testing was performed on July 8, 1998, and *889 the results conclusively showed that he was the father of L.D.G.
On November 16, 1998, after it was conclusively shown that the appellant was the father of L.D.G., the court entered a final order which superseded the interim order and which required the appellant to pay $50 per month child support for both children. The appellant did not challenge that order.
The appellant later obtained full time employment, and on August 28, 2000, the State of West Virginia and G.M., the mother of C.D.G. and L.D.G., filed a petition for modification of the prior order and sought an increase in the child support payable. The appellant hired an attorney, and the attorney prepared a response to the petition for modification. In the response, the attorney stated:
8. The Defendant [appellant] says he has been ordered to pay child support since November 16, 1998 for C... [D.G.] as he was led to believe at that time that he was the father by the mother G... M....
9. The Defendant also says that he is not the father of C... [D.] G..., one of the girls for whom he has been ordered to pay child support. Recently the Defendant learned he may not be the father of C... [D.] G.... So he paid for a blood test to determine paternity. The lab that conducted the test certified that he was excluded from paternity of C... [D.G.] on November 3, 2000, which test was done by the Laboratory Corporation of America. According to the lab's test, the probability of this paternity of C... [D.G.] is 0.00%
He prayed that the court declare him not to be the father of C.D.G. and relieve him of liability for her support.
The matter was submitted to a family law master, and in spite of the submission of the blood test results which conclusively showed that the appellant was not the father of C.D.G., the family law master recommended that the appellant's child support be raised from $50 per month to $397.57 per month.
The appellant petitioned that the circuit court review the family law master's ruling. In his petition, he stated:
The Defendant/Petitioner believes that fraud may have occurred since he was told repeatedly by the Plaintiff G... M... and her family that he was the father of C... [D.] G.... This issue of fraud was brought to the Family Law Master's attention at the January 10th hearing. If the Defendant/Petitioner had an indication that he was not the father of C... [D.] G..., he would have contested the paternity when it was first alleged that he was the father. According to the recollection of the Defendant/Petitioner Mr. G..., he has never signed anything admitting to be the father of C... [D.] G.... If he has held himself out to be her father, he did so based on his sincere belief that he was her father.
The circuit court undertook a review of the matter, and, without conducting a hearing on the appellant's fraud claim, by order dated February 20, 2001, denied the appellant's petition for relief. The court stated:
1. The Defendant, R... G..., was adjudicated the father of C... [D.] G..., by final Order entered on the 7th day of January, 1998, from which Order no appeal was made.
Therefore, the relief requested by the Defendant, R... G..., in his Petition for Review, is denied and overruled.
In the present proceeding, the appellant claims that the circuit court erred in not holding a hearing and in adopting the family law master's recommendation that his child support be increased, when there was conclusive evidence showing that he was not the father of C.D.G., and when he had raised the issue of fraud on the part of the child's mother.

II.

STANDARD OF REVIEW
In Syllabus Point 4 of Burgess v. Porterfield, 196 W.Va. 178, 469 S.E.2d 114 (1996), this Court stated: "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed de novo."

*890 III.

DISCUSSION
In State ex rel. West Virginia Department of Health and Human Resources on Behalf of Laura F.M. v. Cline, 197 W.Va. 79, 475 S.E.2d 79 (1996), this Court recognized that a prior paternity acknowledgment made by a putative father could be revoked, or set aside, on the ground that it had been obtained by fraud. More recently in State ex rel. West Virginia Department of Health and Human Resources, Child Support Enforcement Division v. Michael George K., 207 W.Va. 290, 531 S.E.2d 669 (2000), the Court discussed challenges to a prior paternity acknowledgment and reiterated that a prior acknowledgment of paternity could be challenged on the basis of fraud. However, the Court also stated that a paternity acknowledgment should be set aside only where the fraud was proved by clear and convincing evidence, and only after the Court had considered all applicable preferences, presumptions and equitable principles established by paternity law. The Court concluded:
After the statutory period of time during which a paternity acknowledgment made pursuant to W. Va.Code, 48A-6-6 [1997] may be rescinded has passed, proof by clear and convincing evidence of fraud, duress, material mistake of fact, or similar circumstance raising serious equitable concerns is a necessary prerequisite for a court to entertain a challenge to the validity and effectiveness of such a paternity acknowledgment.
Syllabus Point 1, State ex rel. West Virginia Department of Health and Human Resources, Child Support Enforcement Division v. Michael George K., id.
In his response to the petition for modification in the present proceeding, the appellant alleged that G.M. had misled him into believing that he was the father of C.D.G. and that, in essence, her misrepresentation had resulted in the initial paternity ruling. Later, in his petition for review of the family law master's modification recommendation, the appellant specifically stated: "The Defendant/Petitioner believes that fraud may have occurred since he was told repeatedly by the Plaintiff G... M... and her family that he was the father of C... G...." It thus appears that the appellant did allege fraud.
As has been previously stated, the circuit court ruled that the question of paternity had been adjudicated and that no appeal of that adjudication had been made. On the basis of these facts, the court apparently refused to address the question of whether the prior acknowledgment of paternity by the appellant, upon which the adjudication had been made, was obtained by fraud.
As indicated in State ex rel. West Virginia Department of Health and Human Resources on Behalf of Laura F. M v. Cline., supra, and State ex rel. West Virginia Department of Health and Human Resources, Child Support Enforcement Division v. Michael George K., supra, fraud is a factor which may justify the setting aside of a prior final paternity determination.
It is axiomatic that due process of law requires that a party to a legal proceeding must be given an opportunity to be heard, and this Court has held that the right to be heard contemplates a meaningful hearing. From this flows the principle that a court cannot preclude a party from litigating an issue central to his case. See, Clay v. City of Huntington, 184 W.Va. 708, 403 S.E.2d 725 (1991), and Jordan v. Roberts, 161 W.Va. 750, 246 S.E.2d 259 (1978).
In the present case, this Court believes that by refusing to allow the appellant to develop evidence on the fraud which he has alleged, the circuit court has, in effect, precluded the appellant from litigating an issue central to his case. The Court, therefore, believes that the judgment of the Circuit Court of Lewis County should be reversed, and this case should be remanded for development of the evidence on the question of whether the appellant's initial acknowledgment of the paternity of C.D.G. was induced by the fraudulent conduct of C.D.G.'s mother. If there is clear and convincing evidence of such fraud, the court should reconsider the question of paternity under the principles set forth in State ex rel. West Virginia Department of Health and Human Resources, Child Support Enforcement Division v. Michael George K., supra.
*891 The judgment of the Circuit Court of Lewis County is, therefore, reversed, and this case is remanded for further development.
Reversed and remanded with directions.