423 S.E.2d 624

**STATE of West Virginia ex rel. Lora DILLON, Relator,**

v.

**Honorable L.D. EGNOR, Judge of the Circuit Court of Cabell County, and Robert K. Means, in his Official Capacity as Family Law Master for Cabell County, Respondents.**

No. 21296.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 8, 1992.

Decided Oct. 23, 1992.

---

Brenda Waugh, Legal Aid Soc. of Charleston, Charleston, for relator.

No appearance for the respondents.

MILLER, Justice:

This is an original proceeding in mandamus brought by the relator, Lora Dillon, to compel the respondent judge to enter a final order in a divorce action pending in the Circuit Court of Cabell County. We are asked to decide whether the circuit court can require a *pro se* litigant to draft a proposed order in such cases. We conclude that such a requirement is contrary to our stated policy with regard to *pro se*

litigants, and we award the writ of mandamus.

## I.

The undisputed facts are taken from the petition and the exhibits filed with this Court by the relator.[1] In April of 1991, the relator instituted a divorce action in the Circuit Court of Cabell County. The case was assigned to the respondent judge, the Honorable L.D. Egnor, who referred it to respondent Robert K. Means, a family law master, for evidentiary development. A hearing was conducted in May of 1991, at which both the relator and her husband appeared *pro se*. On July 30, 1991, respondent Means issued a recommended order which was filed with the circuit court. The parties agreed to waive the ten-day period for filing exceptions to the recommended order.

Sometime thereafter, the relator telephoned the office of the respondent judge to inquire about the final order. The relator was told that no order would be entered until she prepared a proposed order for the respondent judge to sign. The relator was given no instructions as to how to prepare such a proposed order.

The relator asserts that the respondent judge had a mandatory nondiscretionary duty to prepare and enter an appropriate final decree and had no authority to order her to prepare a proposed order for his signature. She seeks a writ of mandamus to compel the respondent judge to draft and enter such final order.

## II.

■ At the outset, it is appropriate to discuss in some detail the respective powers and duties of the family law master and the circuit court in domestic relations cases. We begin by noting that "one of the chief purposes of the legislative adoption of the family law master system was to expedite divorce, alimony, and child support procedures. *See* W.Va.Code, 48A-4-

---

1. The respondents made no appearance in this proceeding and filed no response or brief with this Court.

11 (1990)." *State ex rel. Sullivan v. Watt,* 187 W.Va. 447, 455, 419 S.E.2d 708, 716 (1992). The statutes relating to the resolution of domestic disputes through the family law master system must be read in the light of this salutary purpose.

■ In *Segal v. Beard,* 181 W.Va. 92, 95, 380 S.E.2d 444, 447 (1989), we recognized that "[t]he jurisdiction of a family law master is purely statutory; he or she has no inherent powers.... It is clear that the powers possessed by a family law master are restricted to those conferred by statute." (Citations omitted). *See also McCormick v. McCormick,* 184 W.Va. 69, 399 S.E.2d 469 (1990); *Clay v. Clay,* 182 W.Va. 414, 388 S.E.2d 288 (1989). Under W.Va.Code, 48A–4–1(i) (1990), a circuit judge is authorized to refer divorce cases to a family law master for a hearing, except in uncontested cases or where child custody or support is not involved and a written property settlement agreement has been signed.[2] According to W.Va.Code,

48A–4–1(m) (1990), the principal duties of the family law master are to "provide the parties a hearing and make a recommended order[.]"[3]

The conduct of the hearing before the family law master is controlled by W.Va. Code, 48A–4–2 (1990). W.Va.Code, 48A–4–2(b), provides that the family law master "shall preside at the taking of evidence." Among other things, the family law master has the power to enter temporary procedural orders governing the conduct of the hearing[4] and *pendente lite* support and custody orders.[5]

■ After the hearing, the family law master is required to submit a recommended order to the circuit court within ten days following the close of evidence pursuant to W.Va.Code, 48A–4–4(b) (1990), which provides:

"A master who has presided at the hearing pursuant to section two of this article shall recommend an order and

---

**2.** W.Va.Code, 48A–4–1(i) (1990), provides, in pertinent part:

"A circuit court or the chief judge thereof shall refer to the master the following matters for hearing to be conducted pursuant to section two [§ 48A–4–2] of this article: Provided, That on its own motion or upon motion of a party, the circuit judge may revoke the referral of a particular matter to a master if the master is recused, if the matter is uncontested, or for other good cause, or if the matter will be more expeditiously and inexpensively heard by the circuit judge without substantially affecting the rights of parties in actions which must be heard by the circuit court:

\* \* \* \* \* \*

(5) All actions for divorce, annulment or separate maintenance brought pursuant to article two [§ 48–2–1 et seq.], chapter forty-eight of this code: Provided, That an action for divorce, annulment or separate maintenance which does not involve child custody or child support shall be heard by the circuit judge if, at the time of the filing of the action, the parties file a written property settlement agreement which has been signed by both parties[.]"

The 1992 amendments to this statute did not alter these provisions. *See* W.Va.Code, 48A–4–1(i) (1992).

**3.** W.Va.Code, 48A–4–1(m) (1990), provides:

"The master shall give all interested parties opportunity for the submission and consideration of facts, arguments, offers of settlement or proposals of adjustment when time, the

nature of the proceedings and the public interest permit. To the extent that the parties are unable to settle or compromise a controversy by consent, the master shall provide the parties a hearing and make a recommended order in accordance with the provisions of sections two and four [§§ 48A–4–2 and 48A–4–4] of this article."

This provision remained unchanged by the 1992 amendments to the statute. *See* W.Va.Code, 48A–4–1(m) (1992).

**4.** W.Va.Code, 48A–4–2(c), provides:

"A master presiding at a hearing under the provisions of this chapter may:

\* \* \* \* \* \*

"(6) Make and enter temporary orders on procedural matters, including, but not limited to, substitution of counsel, amendment of pleadings, requests for hearings and other similar matters[.]"

**5.** W.Va.Code, 48A–4–3(b) (1990), provides:

"A master who presides at a hearing under the provisions of section two [§ 48A–4–2] of this article is authorized to make and enter pendente lite support and custody orders which, when entered, shall be enforceable and have the same force and effect under law as pendente lite support orders made and entered by a judge of the circuit court, unless and until such support orders are modified, vacated, or superseded by an order of the circuit court."

findings of fact and conclusions of law to the circuit court within ten days following the close of the evidence. Before the recommended order is made, the master may, in his discretion, require the parties to submit proposed findings and conclusions and the supporting reasons therefor."

The contents of the recommended order are set out in W.Va.Code, 48A–4–4(e) (1990): "All recommended orders of the master shall include the statement of findings of fact and conclusions of law, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record; and the appropriate sanction, relief, or denial thereof." Moreover, W.Va.Code, 48A–4–4(c) (1990), requires the family law master to sign the recommended order, to give notice of it to the parties and their attorneys, and to submit it to the circuit court by filing it in the circuit clerk's office "prior to the expiration of the ten-day period during which exceptions can be filed." [6]

Once the recommended order has been submitted to the circuit court, it becomes the court's duty to review it. The parties have ten days after receiving notice of the recommended order to register their exceptions to the family law master's recommendations in a petition for review. W.Va. Code, 48A–4–6 (1990); W.Va.Code, 48A–4–7 (1990). The opposing party has an additional ten days to respond to the petition. W.Va.Code, 48A–4–9 (1990). The circuit court's review is controlled by W.Va.Code, 48A–4–10 (1990). Review commences once the appropriate time periods for filing exceptions and responses thereto have lapsed, or when, as here, the parties expressly waive the right to file a petition for review. W.Va.Code, 48A–4–10(a). W.Va.Code, 48A–4–10(b), provides:

"To the extent necessary for decision and when presented, the circuit court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the appropriateness of the terms of the recommended order of the master."

Under W.Va.Code, 48A–4–10(c), after examining the recommended order and the record, the circuit court "may enter the recommended order, may recommit the case, with instructions, for further hearing before the master or may, in its discretion, enter an order upon different terms, as the ends of justice require." [7]

■ Several conclusions as to the powers and responsibilities of the family law master and the circuit court in domestic relations proceedings can be drawn from our review of these statutory provisions. First, the family law master, like the divorce commissioner under our prior law, is primarily a fact gatherer for the circuit court. See Bego v. Bego, 177 W.Va. 74, 350 S.E.2d 701 (1986). The family law master's recommended order does not have the force and effect of law until it is approved by the circuit court. Indeed, except with regard to temporary procedural orders and pendente lite custody and support orders, the family law master has no power to enter an enforceable order affecting the rights and

---

6. W.Va.Code, 48A–4–4(c), provides:

"The master shall sign and send the recommended order, any separate document containing the findings of fact and conclusions of law and the notice of recommended order as set forth in section four-a [§ 48A–4–4a] of this article to the attorney for each party, or if a party is unrepresented, directly to the party, in the same manner as pleadings subsequent to an original complaint are served in accordance with rule five of the rules of civil procedure for trial courts of record. The master shall file the recommended order and the record in the office of the circuit clerk prior to the expiration of the ten-day period during which exceptions can be filed."

7. Under W.Va.Code, 48A–4–10(c), the circuit court can disapprove a recommended order, finding of fact, or conclusion of law if it is found to be:

"(1) Arbitrary, capricious, an abuse of discretion, or otherwise not in conformance with the law;

"(2) Contrary to constitutional right, power, privilege, or immunity;

"(3) In excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

"(4) Without observance of procedure required by law;

"(5) Unsupported by substantial evidence; or

"(6) Unwarranted by the facts."

obligations of the parties. Under W.Va. Code, 48A–4–5 (1990), that power is reserved to the circuit court.[8] *State ex rel. Sullivan v. Watt, supra.*

■ Secondly, there is no statutory provision specifying the form of the recommended order. It is evident, however, that "the circuit court does not act *de novo*, but reviews the findings of fact and conclusions of law made by the family law master." *State ex rel. Sullivan v. Watt,* 187 W.Va. at 453, 419 S.E.2d at 714. Clearly, in order for the circuit court to fulfill its function, the recommended order must contain a concise and complete statement of findings of fact and conclusions of law, the reasons therefor, and the appropriate disposition of the case, except where there may be matters of a sensitive nature. We note, however, that W.Va.Code, 48A–4–4(c), clearly permits the submission to the circuit court of a "separate document containing the findings of fact and conclusions of law[.]"[9]

### III.

■ The facts of this case present two issues for discussion. First, it is alleged that the respondent judge refused to enter a final divorce order in the relator's case because the recommended order did not contain a draft of the proposed final order. There is no statutory requirement, however, that the recommended order contain a draft final order for entry by the circuit court. Under W.Va.Code, 48A–4–4, all that the recommended order need contain is a statement of the family law master's findings of fact, conclusions of law, and recommended disposition sufficient to enable the circuit court to determine whether the recommendations are appropriate in light of the facts. Ultimately, it is the duty of the

circuit court to see that the final order is entered in the appropriate form.[10]

■ Where the circuit court wishes to approve the recommendations of the family law master in a case involving *pro se* litigants, it may do so by endorsing approval on the family law master's recommended order or by issuing a brief order, incorporating by reference the family law master's findings of fact and conclusions of law. We find this procedure not to be inconsistent with Rule 52(a) of the West Virginia Rules of Civil Procedure, which provides, in pertinent part:

"The findings of a commissioner, to the extent that the court adopts them, shall be considered as the findings of the court. It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence or appear in an opinion or memorandum of decision filed by the court."

We have recognized that under this provision, the circuit court, in entering its final order in a divorce case, may adopt, by reference, the findings and conclusions of the family law master. *See Kaminsky v. Kaminsky,* 181 W.Va. 583, 383 S.E.2d 548 (1989); *Hanshaw v. Hanshaw,* 180 W.Va. 478, 377 S.E.2d 470 (1988).

■ In those instances where the circuit court wishes to alter the family law master's recommended order, it may do so by issuing an order identifying the alternate findings and conclusions and incorporating by reference the approved portion of the family law master's recommended order. *See Hanshaw v. Hanshaw, supra.*

■ The recommended order prepared by respondent Means in this case appears to meet all the requirements of the statute. The respondent judge, if he desired to ap-

---

**8.** W.Va.Code, 48A–4–5, provides:

"With the exception of pendente lite support and custody orders entered by a master in accordance with the provisions of section three [§ 48A–4–3] of this article, and procedural orders entered pursuant to the provisions of section two [§ 48A–4–2] of this article, an order imposing sanctions or granting or denying relief may not be made and entered except by a circuit court within the

jurisdiction of said court and as authorized by law."

**9.** For the text of W.Va.Code, 48A–4–4(c), see note 6, *supra.*

**10.** In those cases where the circuit judge is empowered to hear the divorce case initially, *see* note 2, *supra,* and the case proceeds on a *pro se* basis, then judge should prepare the final order.

prove the recommended order, need only have entered a brief order incorporating by reference the provisions of the recommended order as drafted by respondent Means.[11]

The second question presented is whether the respondent judge had the authority to require the relator to prepare a draft of the final order for his signature. We are aware of the practice of having the attorneys for the parties prepare draft orders for submission to the court. Of paramount concern in this case, however, is the fact that both the relator and her husband were *pro se* litigants in the divorce proceedings below.

In Syllabus Point 1 of *Blair v. Maynard*, 174 W.Va. 247, 324 S.E.2d 391 (1984), we articulated the constitutional right of self-representation in civil cases:

> "Under West Virginia Constitution art. III, § 17, the right of self-representation in civil proceedings is a fundamental right which cannot be arbitrarily or unreasonably denied." [12]

We also recognized in *Blair* that protection of this right requires the trial court to make "reasonable accommodations" to assist the *pro se* litigant in negotiating the labyrinth of legal proceedings. This principle was succinctly stated in *Bego v. Bego*, 177 W.Va. at 76, 350 S.E.2d at 703–04 (1986):

> "When a litigant chooses to represent himself, it is the duty of the trial court to insure fairness, allowing reasonable accommodations for the pro se litigant so long as no harm is done an adverse party.... Most importantly, the trial court must 'strive to insure that no person's cause or defense is defeated solely by reason of their unfamiliarity with procedural or evidentiary rules.'" (Citations omitted).

*Quoting Blair v. Maynard*, 174 W.Va. at 252–53, 324 S.E.2d at 396. These principles

have been applied in divorce actions. *Bego v. Bego, supra; Hawkinberry v. Maxwell*, 176 W.Va. 526, 345 S.E.2d 826 (1986).

We think it beyond question that requiring a layman litigant to draft the final order in a divorce action offends the strong public policy principles expressed in the above-cited cases. The vast majority of *pro se* litigants will be unschooled in the intricacies of law and procedure necessary to produce a suitable final order. Many will be economically and educationally disadvantaged. There is no justification for requiring those who come into court seeking inexpensive and efficacious justice to perform a task which the trial judge is trained and paid by tax dollars to perform. Such a requirement can only confound the policy of providing expedient resolution of domestic relations cases underlying the family law master system.

■ Accordingly, we conclude that where the litigants in a divorce case appear *pro se*, and the recommended order of the family law master is submitted to the circuit court without the filing of exceptions, the circuit court, and not the layman litigant, has the duty to prepare the final order. We emphasize that we do not address in this case the propriety of requiring attorneys for the parties or a *pro se* litigant who is also a practicing attorney to prepare such proposed orders. We hold only that where a layperson appears *pro se* in a divorce action, it is the duty of the trial court, and not of the *pro se* litigant, to prepare the final order.

■ We also observe that the family law master owes no lesser duty to *pro se* litigants. In cases involving *pro se* litigants, the family law master has a duty, under W.Va.Code, 48A–4–1(m), and W.Va. Code, 48A–4–4(b), to prepare the recommended order. We noted as much in *Segal v. Beard, supra*, where the attorneys for

---

11. It is also possible for the circuit judge to endorse on the family law master's recommended order a statement that it has been reviewed and approved by the circuit judge, followed by the date and the judge's signature.

12. Article III, Section 17 of the State Constitution provides: "The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay."

the parties to a divorce action modified and signed a proposed recommended order prepared by the family law master. The family law master made no changes in the draft decision and submitted it, as modified by the parties, to the circuit court. In note 3 of *Segal*, 181 W.Va. at 95, 380 S.E.2d at 447, we stated:

"While the family law master may, in his or her discretion, require the parties to submit proposed findings and conclusions, ... the family law master, not counsel, should have prepared the recommended decision, including the proposed court order, ... and any exceptions should have been noted for the first time in the petition for review after the recommended decision was filed." (Citations omitted).

█ Obviously, the family law master may still require the attorneys for the parties to submit proposed findings of fact and conclusions of law,[13] and may, in an appropriate case, adopt such proposed findings and conclusions. With respect to *pro se* litigants, however, we have noted that a family law master acts in the trial court's stead and "has a duty identical to that of the court to make reasonable accommodations for a litigant who is representing himself, insuring that substantial justice is done." *Bego v. Bego*, 177 W.Va. at 77, 350 S.E.2d at 704. (Footnote omitted).

Here, however, there is no allegation that respondent Means required the relator to draft the recommended order. Our grant or denial of the writ of mandamus prayed for must, therefore, be directed only to the respondent judge.

### IV.

█ We have recognized that a writ of mandamus is available to compel an inferior court to perform a ministerial or nondiscretionary duty. In Syllabus Point 2 of *State ex rel. Patterson v. Aldredge*, 173 W.Va. 446, 317 S.E.2d 805 (1984), we stated:

" 'Mandamus will not lie to direct the manner in which a trial court should exercise its discretion with regard to an act

either judicial or quasi-judicial, but a trial court, or other inferior tribunal, may be compelled to act in a case if it unreasonably neglects or refuses to do so.' *State ex rel. Cackowska v. Knapp*, 147 W.Va. 699, 130 S.E.2d 204 (1963)."

*See also State ex rel. Lambert v. Cortellessi*, 182 W.Va. 142, 386 S.E.2d 640 (1989). In *State ex rel. Judy v. Kiger*, 153 W.Va. 764, 767–68, 172 S.E.2d 579, 581 (1970), we stated:

" 'When a duty is imposed by a law upon a court, a *mandamus* from a higher court is the proper means to compel the discharge of such duty. When such duty is so plain in point of law and so clear in matter of fact that no element of discretion is left as to the precise mode of its performance, such duty is ministerial, and a writ of *mandamus* to compel the performance of such duty will specify the exact mode of performance.' " *Quoting* S. Merrill, *Law of Mandamus* § 186 (1892).

*See also State ex rel. Board of Educ. v. Spillers*, 164 W.Va. 453, 259 S.E.2d 417 (1979).

█ Here, the relator was a *pro se* litigant in a case in which both parties waived the right to file exceptions. There has been no showing that she has legal training which would qualify her to prepare a draft order. Accordingly, we conclude that the circuit court had no discretion to order the relator to draft the final order, and we believe that mandamus is appropriate in this case.

### V.

For the reasons stated above, we conclude that the relator is entitled to relief in mandamus. Accordingly, we grant the writ of mandamus prayed for with respect to the respondent judge and direct him to prepare and enter a final order in the relator's case within thirty days.

Moulded writ granted.

---

13. *See* W.Va.Code, 48A–4–4(b).