557 S.E.2d 306

**STATE of West Virginia ex rel. WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES, BUREAU FOR CHILD SUPPORT ENFORCEMENT, and Threece Elaine T., Plaintiffs Below, Appellees**

v.

**WAVEY GLENN G., Defendant Below, Appellant**

No. 29683.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 6, 2001.

Decided Nov. 28, 2001.

Carol Egnatoff, Assistant General Counsel, Bureau for Child Support Enforcement, Charleston, for the Appellees.

Wavey Glenn G., Appellant, Pro Se.

PER CURIAM.

This is a *pro se* appeal by Wavey Glenn G. (hereinafter "Appellant")[1] from a January 26, 2001, order of the Circuit Court of Kanawha County finding that the Appellant was the biological father of infant Andre C., and requiring the payment of child support and reimbursement for AFDC expenditures. The Appellant contends that the lower court erred by establishing paternity without requiring blood testing, as proposed by the Appellant. Upon thorough review of this matter, this Court concludes that the lower court erred by establishing paternity without ordering blood testing. We consequently reverse the decision of the lower court and remand this matter for further evaluation in accord with this opinion.

I. Facts

Andre C. was born on June 20, 1993, to Threece T., unmarried at the time of the child's conception and birth. The child's birth certificate did not list a father's name. On September 22, 2000, the Department of Health and Human Resources, Bureau for Child Support Enforcement (hereinafter "DHHR"), instituted a civil action on behalf of Threece T., against the Appellant to establish paternity and child support for Andre C. The Appellant's sister,[2] Patricia C., was personally served with the complaint on September 29, 2000.

Based upon the Appellant's failure to file an answer to the complaint, the DHHR filed a motion for default judgment on November 1, 2000. On November 2, 2000, the family law master conducted a hearing, and the Appellant did not appear.[3] While this Court does not have a transcript of the November 2, 2000, family law master hearing, counsel for the DHHR indicates that Threece T. alleged that the Appellant was the father of Andre C.

---

1. We follow our traditional practice in cases involving paternity actions, and do not use the last names of the parties. *See, e.g., State of West Virginia ex rel. Division of Human Services v. Benjamin P.B.*, 183 W.Va. 220, 222 n. 1, 395 S.E.2d 220, 222 n. 1 (1990); *Shelby J.S. v. George L.H.*, 181 W.Va. 154, 155 n. 1, 381 S.E.2d 269, 270 n. 1 (1989).

2. The Appellant's sister, Patricia C., resided in the household with the Appellant. The Appellant does not raise an issue with regard to the sufficiency of service of the complaint.

3. The record contains a "Notice of Initial Scheduling Conference" set for November 2, 2000, and the notice indicates that a copy was mailed to the Appellant on September 26, 2000. That notice informed the Appellant that he could participate in the conference by telephone or appear in person. The Appellant does not address the issue of whether he received proper notice of the November 2, 2000, hearing.

On November 9, 2000, the family law master filed a recommended order establishing paternity, providing ten days for the filing of exceptions. On November 17, 2000, the Appellant filed exceptions to the family law master's recommended order and indicated specifically that he was not the father of Andre C. and that paternity had not been properly established. The Appellant asserted that he was incarcerated from 1990 to 1992 and again from 1993 to 1995. He further indicated that he had attempted to obtain blood testing to disprove paternity, but permission for such testing had not been granted by the infant's mother, Threece T.

On November 28, 2000, apparently unaware of the Appellant's timely filing of exceptions to the family law master's recommendations, the lower court adopted the family law master's recommended order, establishing paternity and awarding child support of $137.35 per month and reimbursement of $252.00 in AFDC benefits paid from June 1, 1997, to January 31, 1998.

On January 2, 2001, the Appellant filed a notice of hearing[4] for a January 17, 2001, hearing on his exceptions to the family law master's recommended decision. On January 17, 2001, the lower court found that the Appellant's exceptions had been timely filed, and the lower court consequently reconsidered its prior order in light of the Appellant's exceptions. The Appellant did not appear for the January 17, 2001, hearing and has provided no explanation for his failure to attend the hearing he requested. There is no transcript of this hearing in the record.

By order dated January 26, 2001, the lower court affirmed its prior order of November 29, 2000, and denied the Appellant's exceptions. On February 16, 2001, the Appellant filed a *pro se* petition for appeal with this Court, explaining as follows:

I disagree with the Judges Order because I was refused any kind of paternity test. I'm being forced to pay child support to the child in question. Also they are add-

ing my name to the child's birth certificate, all without paternity being established. I would like for paternity to be established.

This Court granted the Appellant's petition for appeal on May 21, 2001. The Appellant did not file a brief with this Court. On July 12, 2001, the clerk of this Court attempted to contact the Appellant and learned that the Appellant's telephone had been disconnected.

## II. Standard of Review

This Court has articulated the standard of review applicable where a circuit court adopts the findings and recommendations of a family law master. In syllabus point one of *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995), this Court provided:

> In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

Likewise, in syllabus point four of *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996), this Court set forth the following standard of review: "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*."

Pursuant to that standard of review, this Court must determine, through a *de novo* review, whether the family law master and the circuit court in the case sub judice correctly applied applicable statutes and properly decided the case. *See State Child Support Enforcement Div. ex rel. Young v. Prichard*,

---

4. The notice of hearing was signed by the Appellant and specified that the hearing would be

conducted on January 17, 2001, at 3:00 p.m.

208 W.Va. 762, 765, 542 S.E.2d 925, 928 (2000).

### III. Discussion

The fundamental purpose of a paternity action was expressed by this Court in *Kessel v. Leavitt*, 204 W.Va. 95, 511 S.E.2d 720 (1998), as follows: "Both the statute granting initial permission to request a paternity determination, W.Va.Code § 48A–6–1(a), and the provision which attaches an order of support to the establishment of paternity, W.Va. Code § 48A–6–4, suggest that the purpose of a paternity action is to determine whether a certain man is legally obligated to provide support for a particular child." *Id.* at 171, 511 S.E.2d at 796.[5] In ascertaining whether a man is legally obligated to provide support, West Virginia Code § 48A–6–3 (1997 Repl. Vol.1999) addresses the role of genetic testing and provides as follows: "If genetic testing is not performed pursuant to an order of the child support enforcement division, the court may, on its own motion, or shall upon the motion of any party, order such tests."[6] With specific regard to persons failing to appear and defend a paternity action, West Virginia Code § 48A–6–1(h) (1997 Repl.Vol. 1999) permits the entry of a default judgment on the issue of paternity where "the person against whom the proceeding is brought has failed to plead or otherwise defend the action."[7]

The DHHR contends that the lower court in the present case was not required to order blood testing to establish paternity because the Appellant failed to file a written answer to the complaint, failed to appear for the family law master hearing, and failed to appear for the hearing on his own exceptions scheduled for January 17, 2001. Upon our review of this matter, we conclude that the

DHHR's argument fails in several essential respects.

■ Incident to the lower court's January 17, 2001, finding that the Appellant had timely filed his exceptions to the family law master's recommended order, the lower court undertook an obligation to review such exceptions and proceed with appropriate responsive action. While the Appellant did not make a specific motion for genetic testing, his exceptions did assert that he was not the father of Andre C. and that paternity had not been properly established. Further, the Appellant raised the issue of genetic testing in his exceptions by explaining that the child's mother had refused to permit DNA testing. While the Appellant's failure to appear at the January 17, 2001, hearing on his exceptions deprived him of the opportunity to personally participate in the challenge to the family law master's recommendations, his failure to appear does not invalidate the issues advanced by the Appellant's exceptions.[8] West Virginia Code § 48A–6–3, as quoted above, provides that the court may order genetic testing sua sponte.

■ In our evaluation of this issue, we must also be aware that this Court has previously recognized the special considerations existing in *pro se* litigation and has encouraged modifications to accommodate the particular needs of the *pro se* litigants. In syllabus point one of *Blair v. Maynard*, 174 W.Va. 247, 324 S.E.2d 391 (1984), this Court explained the constitutional right of self-representation in civil cases, as follows: "Under West Virginia Constitution art. III, § 17, the right of self-representation in civil proceedings is a fundamental right which cannot

---

5. The West Virginia Legislature recodified domestic relations law and altered the code sections under which these paternity statutes are located, effective April 14, 2001. Section 48A–6–1 is currently located at § 48–24–101, and § 48A–6–4 is currently located at § 48–24–104. Because this case was decided prior to the effective date of the new statutes, we refer to the statutes as they existed prior to April 21, 2001.

6. Similar language is now contained in West Virginia Code § 48–24–103 (2001).

7. Similar language is now contained in West Virginia Code § 48–24–101(i) (2001).

8. A default judgment in a paternity action is proper where the defendant fails to appear "or otherwise defend" the claim against him. W. Va.Code § 48A–6–1(h). In the present case, the Appellant failed to appear but did file timely exceptions to the family law master's recommendations which were properly considered by the lower court.

be arbitrarily or unreasonably denied." In *State ex rel. Dillon v. Egnor*, 188 W.Va. 221, 423 S.E.2d 624 (1992), this Court addressed the special contingencies of *pro se* litigation and observed that preservation of this fundamental right of self-representation compels a trial court to make " 'reasonable accommodations' to assist the *pro se* litigant in negotiating the labyrinth of legal proceedings." *Id.* at 227, 423 S.E.2d at 630 (quoting *Blair*, 174 W.Va. at 253, 324 S.E.2d at 396).[9]

We find that the lower court should have ordered genetic testing sua sponte, pursuant to West Virginia Code § 48A–6–3. The Appellant specifically denied paternity in his exceptions, he referenced his desire for genetic testing in his exceptions, and he was attempting to "negotiat[e] the labyrinth of legal proceedings" *pro se. Id.* We consequently reverse the decision of the lower court and remand this matter for entry of an order requiring genetic testing to determine whether the Appellant is the father of Andre C. Based upon the Appellant's prior failure to appear, the Appellant shall be provided a sixty-day period within which to appear and submit to testing. If the Appellant fails to appear within sixty days after service of notice of his right to genetic testing or cannot, with reasonable diligence, be located for service of such notice, his dilatory conduct shall have deprived him of his rights, and the lower court shall enter a paternity finding against him.

Reversed and remanded with directions.

---

**9.** In syllabus point six of *Dillon*, this Court held that "[w]here the litigants in a divorce case appear *pro se*, and the recommended order of the family law master is submitted to the circuit court without the filing of exceptions, the circuit court, and not the layman litigant, has the duty to prepare the final order." 188 W.Va. at 223, 423 S.E.2d at 626. This Court has also held that "where a *pro se* litigant has a colorable claim but lacks capacity to present it, the court should appoint counsel to assist him prepare his complaint." *Craigo v. Hey*, 176 W.Va. 514, 520, 345 S.E.2d 814, 820 (1986).