## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**William Grant, Raymona Grant,**
**Kodie Grant, an infant by next friend and**
**Mother, Raymona Grant, and**
**Mikaela Grant, an infant by next friend**
**and mother, Raymona Grant,**
**Plaintiffs Below, Petitioners**

**FILED**

**November 16, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 17-0863** (Wood County 14-C-2628)

**Kelly Paving, Inc.,**
**A West Virginia Corporation,**
**Defendant Below, Respondent**

### MEMORANDUM DECISION

Petitioners William and Raymona Grant, and their children Kodie Grant and Mikaela Grant, by counsel Barbara Harmon-Schamberger, appeal the order of the Circuit Court of Wood County, entered on August 22, 2017, granting Respondent Kelly Paving's motion for summary judgment on petitioners' claim that their home was damaged by respondent's negligence.[1] Respondent appears by counsel Adam Barnes.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioners filed a complaint in the Circuit Court of Wood County in 2014, asserting that respondent, while paving the street in front of their home, used "a piece of equipment that caused

---

[1] Petitioners' appeal incriminates the performance of their counsel. Petitioners were represented before the circuit court by their current counsel, Ms. Harmon-Schamberger, and "lead counsel" Wayne King. In their brief before this Court, petitioners represent that both of their attorneys were in poor health during the litigation and that Ms. Harmon-Schamberger "experienced a medical event that rendered counsel unable to effectively prosecute this matter." They state that they were aware of Ms. Harmon-Schamberger's illness, but assert that Mr. King "never responded to [their] attempts to reach him." Mr. King is not counsel of record for this appeal.

1

vibrations in a greater degree than the normal piece of equipment" and that respondent's use of that equipment caused "great damage to the structural integrity of the home which they occupied."[2] The circuit court entered a scheduling order in early 2015. Over the following nearly two-year period, petitioners neither noticed the deposition of respondent's expert witness nor served discovery requests on respondent. It also appears that, despite several extensions granted by the circuit court, petitioners did not disclose an expert witness. Nevertheless, in its order granting summary judgment, the circuit court referred to Samuel Wood as the "plaintiffs' expert." Mr. Wood is an engineer who inspected the home at the request of Mrs. Grant and who was identified in petitioners' discovery responses as a potential witness.

Respondent filed a motion for summary judgment in February of 2017. Petitioners did not respond. Respondent's counsel appeared for a pretrial hearing on March 23, 2017, and argued in favor of the summary judgment motion; petitioners' counsel did not appear. The circuit court then mercifully gave petitioners' counsel until April of 2017 to identify

> any part of the record they assert raises a genuine issue as to the . . . delineated factual issues or to specify what further discovery they intend to conduct to demonstrate the existence of a genuine issue as to such matters with a specific statement as to why they believe such discovery is likely to provide the same, specifically describing the proposed discovery and its timetable for completion.

Petitioners requested an extension of time and a continuance of the trial date, and the circuit court granted the request. Petitioners eventually filed a response to the summary judgment motion on August 15, 2017, four months after the last deadline established by the circuit court. In their response, petitioners questioned respondent's expert's report that opined that respondent's machinery operated within industry standards. Petitioners argued, without foundation or legal citation, that because their home was located in a "historic district[,]" industry standards did not apply and they were due a higher standard of care based on "the act speaking for itself." The only evidence cited in petitioners' brief was a small portion of the testimony of Mr. Wood, the engineer, stating that "he knew that the house shook from the vibrations from the roller but did not know what level the vibrations were." The circuit court granted respondent's motion for summary judgment one week later. It found that respondent showed that it operated equipment within industry standards, and petitioners failed to show that they were entitled to a heightened standard of care.

The following month, on September 22, 2017, petitioners filed with the circuit court a "motion for reconsideration" of the dismissal of their claim, which the circuit court considered under Rule 60(b) of the West Virginia Rules of Civil Procedure and denied nearly two months

---

[2] Petitioners' complaint also named as defendants Shelly & Sands, Inc., The City of Parkersburg, and Carl Kelly d/b/a Kelly & Sons. Those defendants were dismissed prior to the grant of summary judgment that is the subject of this appeal.

later.[3] On the same date that they filed the Rule 60(b) motion, petitioners filed their notice of appeal with this Court.[4] On appeal, petitioners assert six assignments of error. They argue that the trial court erred in 1) ascribing no significance to the "legally designated historic district" in which petitioners' home was located; 2) finding no duty of care owed by respondents to petitioners; 3) finding that the location of petitioners' home in a historic district did not raise the duty of care; 4) crediting respondent's expert witness's testimony; 5) finding that there was no issue of material fact; and 6) denying petitioners' motion to introduce an additional expert in support of their claim, based on counsel's "incapacity . . . and [p]etitioners' de facto pro se efforts to obtain further evidence when the case law supports accommodating [p]etitioners who are in such position."

We begin with petitioners' sixth and final assignment of error, wherein they assert that they acted "de facto pro se" and were therefore entitled to introduce evidence after the close of discovery. Because, it appears, petitioners may have sought the introduction of such evidence in

---

[3] As we have repeatedly noted, the West Virginia Rules of Civil Procedure do not authorize a "motion for reconsideration." *See Builders' Serv. & Supply Co. v. Dempsey*, 224 W. Va. 80, 83, 680 S.E.2d 95, 98 (2009). Petitioners' motion appears to be a motion for relief from judgment made pursuant to Rule 60(b) of West Virginia Rules of Civil Procedure, and we will refer to it as such.

[4] We note that petitioners did not attach a copy of the Rule 60(b) motion or the order denying it to the notice of appeal, nor did they include those documents in the appendix record on appeal. Both documents appear to be vital to our consideration of at least one of petitioners' assignments of error and, thus, should have been provided to the Court. Rule 7(d)(2) of the West Virginia Rules of Appellate Procedure explicitly requires that the petitioner provide the "judgment or order appealed from, and all other orders applicable to the assignments of error on appeal." Furthermore, Rule 10(c)(7), in relevant part, requires that

> [an] argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Respondent does not challenge the jurisdiction of the circuit court to consider the Rule 60(b) motion after the notice of appeal was filed with this Court. And why should it? Respondent disputes that petitioners based their request for relief in the Rule 60(b) motion on their desire to introduce additional evidence. Without the benefit of the critical document, we take respondent's representation as true. We are, thus, not obligated to consider petitioner's sixth assignment of error. We do so nonetheless, to address petitioners' novel argument that the lackluster performance of their counsel relieves petitioners of the consequences flowing from counsel's failure to zealously safeguard their interests.

the Rule 60(b) motion, we note that our review of such a motion is for an abuse of discretion.[5] *See Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.*, 196 W. Va. 692, 705, 474 S.E.2d 872, 885 (1996).

Petitioners' argument on this assignment of error is based on their assertion that, though represented by two attorneys, they did not receive effective representation. They further claim that they obtained (without assistance from counsel) a report from "an engineer with a Ph.D. who specializes in vibration damage," but that counsel failed to disclose this report prior to the discovery deadline. Petitioners argue that they are therefore entitled to be treated as pro se litigants and "should not be held accountable for all of the procedural nuances of the law." *Frank P. Bush, Jr. & Assocs., L.C. v. Hammer*, 215 W. Va. 599, 603, 600 S.E.2d 311, 315 (2004) (Davis, J., concurring). We note, however, that we expect our courts to extend "reasonable accommodations" to pro se litigants, but not at the expense of an adverse party. *See State ex rel. Dillon v. Egnor*, 188 W. Va. 221, 227, 423 S.E.2d 624, 630 (1992) (internal quotations and citation omitted). "[U]ltimately, the pro se litigant must bear the responsibility and accept the consequences of any mistakes and errors." *Blair v. Maynard*, 174 W. Va. 247, 253, 324 S.E.2d 391, 396 (1984) (internal citations omitted). None of the cases cited in petitioners' brief propose that we extend any measure of leniency to litigants represented by dilatory attorneys.

Even if we applied a relaxed standard to the matter before us, which we find no cause to do, there would be no reason to subject respondent to the re-litigation of this resolved case. We particularly note that petitioners' brief describes their extraordinary awareness of and involvement with the litigation of their claims. They were sufficiently aware, for example, of the need for an expert witness that they engaged a witness "who specializes in vibration damage" without the aid of counsel. But they inexplicably did not seek the aid of the circuit court or explore other avenues to introduce that evidence, which they had in hand. If they sought to do so belatedly through the Rule 60(b) motion, there was no basis for the circuit court to grant relief. We have clarified that

---

[5] *See* n. 3. Though respondent disputes that petitioners ever sought this relief from the circuit court, we assume that, if petitioners did seek such late introduction of evidence, they could only have done so after the entry of summary judgment, in light of the circuit court's long-suffering forbearance and invitation to identify

> any part of the record they assert raises a genuine issue as to the . . . delineated factual issues or to specify what further discovery they intend to conduct to demonstrate the existence of a genuine issue as to such matters with a specific statement as to why they believe such discovery is likely to provide the same, specifically describing the proposed discovery and its timetable for completion.

Certainly, no outstanding evidence was identified in petitioners' response to respondent's motion for summary judgment, which was filed just one week prior to entry of the summary judgment order.

4

[i]t is established also that a Rule 60(b) motion does not present a forum for the consideration of evidence which was available but not offered at the original summary judgment motion. *See Anthony v. Runyon*, 76 F.3d 210, 215 (8th Cir. 1996) ("a motion for reconsideration should not be used 'as a vehicle' to introduce new evidence that could have been adduced during pendency of the [previous] motion").

*Powderidge Unit Owners Ass'n*, 196 W. Va. at 706, 474 S.E.2d at 886. Thus, the circuit court did not abuse its discretion in denying petitioners' Rule 60(b) motion and, if that denial effectively prohibited the introduction of evidence that petitioners had prior to the circuit court's entry of summary judgment, there is no error.

Having found that petitioners are entitled to no relief on their sixth assignment of error, and having thus restricted petitioners' evidence to the sparse offering that was before the circuit court, we consider together petitioners' first through fifth assignments of error. These matters come before us in petitioners' appeal from the circuit court's grant of summary judgment, and our review is de novo. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Petitioners' success or failure on each of these assignments of error turns on our determination of whether petitioners put forth any evidence that would support a finding that respondent breached a duty of care owed to owners of a home located in a historic district, or that otherwise refuted the opinion of respondent's expert witness.[6] We find that they did not. As noted above, the only evidence that petitioners put before the circuit court in their effort to impede the grant of summary judgment was the non-specific testimony of Mr. Wood. The only argument they put forth was their own unsupported conclusion that respondent owed a higher (but also unspecified) duty of care to petitioners based on the location of their home. This is simply insufficient to overcome respondent's expert witness's opinion that respondent operated all machinery within acceptable industry standards.

Furthermore, petitioners press us to find that their claim for damage to their home is a matter that benefits from the doctrine of res ipsa loquitur. In *Foster v. City of Keyser*, 202 W. Va. 1, 14-15, 501 S.E.2d 165, 178-79 (1997), we revived the "rather eloquent[]" expression of the rule of res ipsa loquitur from our early case of *Snyder v. Wheeling Electrical Co.*, 43 W.Va. 661, 667-668, 28 S.E. 733, 735 (1897):

This involves the rule or principle of *res ipsa loquitur*,-the thing itself speaks. A wire charged with a deadly current of electricity falls from its proper place of elevation above the street to the surface of the street, and there, by contact with a man lawfully passing along the highway, kills him with its current. Are we to presume that its fall came from some negligence of the owner, unless the circumstances of the case or facts shown by him shall show that its fall is not attributable to his negligence, but from some defect which that reasonable care and prudence proper in the case of such deadly wire was unable to discover, or

---

[6] Petitioners argue that testing described in respondent's expert witness's report did not adequately replicate the conditions under which their home was damaged.

5

some accident beyond his control; in other words, from inevitable accident? I answer that the law raises a *prima facie* case of negligence. As stated in that great work, 16 Am. & Eng. Enc. Law, p. 448: "As a rule, negligence is not presumed. But there are cases where the maxim, '*Res ipsa loquitur*,' is directly applicable, and from the thing done or omitted negligence or care is presumed." The rule cannot be better stated, in its generality, than as given in *Scott v. Dock Co.*, (1865) 3 Hurl. & C. 596: "There must be reasonable evidence of negligence. But where the thing is shown to be under the management of the defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care." In those words it is approved in 1895 in *Shafer v. Lacock*, 168 Pa. St. 497, (32 Atl. 44), a case where two workmen were repairing a roof, having a fire pot, and from it a fire resulted, destroying the house. " When the physical facts of an accident themselves create a reasonable probability that it resulted from negligence, the physical facts themselves are evidential, and furnish what the law terms evidence of negligence, in conformity with the maxim, 'Res ipsa loquitur,'" is the apt language in which the principle is stated in *Seybolt v. Railroad Co.*, 95 N.Y. 562. One man is hurt from the works or property of another, when from the nature of the case, he would not likely have been hurt without negligence of that other. May he not ask of that other an explanation, or, on his failure to give it, then damages for his injury? Take the case where one, in passing along a street, is hurt by a barrel falling from a door above, or by a brick falling from a wall or scaffold, or by a falling shutter or wall, or the like. The mere occurrences in themselves import negligence. Especially take the cases where things of great danger are used in public highways, where multitudes constantly and lawfully pass, their very nature requiring the highest degree and constancy of care, and one is killed from its being out of place or defective, why may we not logically and fairly assume negligence, unless other plausible explanation appears?

Under the circumstances before us, we find that the thing itself certainly does not speak. The common man would not presume that in the ordinary course of paving of a city street, even one situated in a historic district, earthquake-like damage is a foreseeable consequence. Such a finding necessitates the evaluation of specialized evidence, of which petitioners' offering is devoid. Thus, there is no evidence that respondent acted in a negligent manner that resulted in petitioners' harm.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 16, 2018

6

**CONCURRED IN BY:**

Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment

**DISSENTING:**

Chief Justice Margaret L. Workman