**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


**Michael R. Rea,**
**Plaintiff Below, Petitioner**

**vs.) No. 21-0314** (Wood County 19-C-256)

**Timothy A. Rea,**
**Defendant Below, Respondent**


**MEMORANDUM DECISION**


Self-represented Petitioner Michael R. Rea appeals two orders of the Circuit Court of Wood County. In a November 4, 2020, order, the circuit court awarded summary judgment to Respondent Timothy A. Rea on petitioner's claim that a partnership existed between the parties and on respondent's counterclaim that he was the sole owner of the property that petitioner alleged was owned by the partnership. In a March 22, 2021, order, the circuit court denied petitioner's motion to alter or amend the November 4, 2020, order. Respondent Timothy A. Rea, by counsel Anthony E. Nortz, filed a response in support of the circuit court's orders. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's orders is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner and respondent are brothers. Petitioner states that, in 2001, he was a crab fisherman in South Carolina when he heard that another of his brothers, Joseph F. Rea, wanted to sell real property known as Route 2, Box 112 in Williamstown, West Virginia. According to petitioner, in 2001, respondent was "a landlord of several rental properties" and was in the business of "flipp[ing] or rent[ing] out properties."

Petitioner alleges that he and respondent formed a partnership to buy the Williamstown

1

property from Joseph F. Rea. However, it is undisputed that the 2001 deed resulting from the sale of Joseph F. Rea's property does not reflect that either petitioner or the alleged partnership was one of the purchasers. Rather, according to the 2001 deed, respondent—together with his then-wife Cindy Rea and two other of the parties' brothers (W. Mark Rea and Paul V. Rea)—bought the property. Respondent admits that he received $3,000 from petitioner to finance the purchase of the property.

In 2004, respondent and Cindy Rea divorced. By quitclaim deed, Cindy Rea, W. Mark Rea, and Paul V. Rea relinquished their interests in the property and, according to respondent, he became the sole owner of the property. Petitioner does not dispute that the 2004 quitclaim deed does not list petitioner or the alleged partnership as a second grantee.

Subsequently, in 2019, petitioner filed a civil action in the Circuit Court of Wood County claiming that the property was owned by an alleged partnership consisting of himself and respondent. Attached to the complaint was respondent's hand-written ledger showing that, from 2001 to 2004, respondent received $20,900 from petitioner, with the initial $3,000 being used by respondent to finance the property's purchase as an "investment." Petitioner alleged that the parties entered into an oral agreement in 2001 to purchase the property as partners and to earn profits from the property by renting it. According to petitioner, the parties did not expect to share profits because it was agreed that any profits would be used to make mortgage payments and for property maintenance. Petitioner further alleged that, because he was residing in South Carolina in 2001, the parties agreed that respondent was responsible for the management of the property while petitioner would provide funding as necessary. Finally, petitioner alleged that, from 2014 to 2019, respondent paid him a total of $4,520 "to buy [petitioner's] interest in the partnership."

In respondent's answer, he denied that any partnership existed between the parties and asserted that he had repaid approximately $16,000 of the loans petitioner made to him with "no schedule . . . set or monthly amount agreed upon." Respondent asserted a counterclaim, alleging that he was the sole owner of the property.

During discovery, respondent took petitioner's deposition. Petitioner stated that he had "no idea" if "any tax documents [were] put together for the partnership." Petitioner further acknowledged that he never obtained insurance for the alleged partnership or authorized the opening of a bank account in the partnership's name. According to petitioner, obtaining insurance and opening bank accounts on the partnership's behalf was respondent's responsibility because respondent "r[a]n the business."

Each of the parties filed a motion for summary judgment. In petitioner's motion, he sought summary judgment on his primary claim that a partnership existed between himself and respondent.[1] In respondent's motion, he sought an order granting him summary judgment, and

---

[1]Petitioner refers to his motion as a motion for partial summary judgment. Petitioner's complaint contains the following three claims: (1) the parties reached an oral agreement to form a partnership; (2) a partnership existed between petitioner and respondent; and (3) the West Virginia (continued . . .)

finding that no partnership existed and that he was the sole owner of the property. Following petitioner's deposition, respondent renewed his motion for summary judgment based upon petitioner's deposition testimony.

Following a September 21, 2020, hearing, the circuit court found that, while petitioner claimed that a partnership existed between the parties, petitioner "did not produce a[n] [Internal Revenue Service ('IRS')] Form 1065, his tax records, or any other documents showing the sharing of profits and losses of the alleged partnership." In addition, "[petitioner] is not aware of any partnership bank account," and "[petitioner] never purchased insurance for the . . . property, or the partnership." The circuit court further found that, even if petitioner received profits earned from the property, receipt of those profits did not make petitioner a partner pursuant to West Virginia Code § 47B-2-2(c)(3)(i) if those "profits were received in payment: . . . [o]f a debt by installments or otherwise." Finally, the circuit court found that "[t]he chain of title for the . . . property indicates that [respondent] is the sole deeded owner of the . . . property and that no partnership has ever been an owner of the . . . property." Accordingly, by an order entered November 4, 2020, the circuit court denied petitioner's motion for summary judgment and granted respondent's renewed motion for summary judgment. On November 18, 2020, petitioner filed a motion to alter or amend the circuit court's November 4, 2020, order. By order entered on March 22, 2021, the circuit court denied the motion.

Petitioner now appeals the circuit court's November 4, 2020, and March 22, 2021, orders. We have held that the standard of review for the denial of a motion to alter or amend judgment filed pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure "is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed." Syl. Pt. 1, *Wickland v. Am. Travellers Life Ins. Co.*, 204 W. Va. 430, 513 S.E.2d 657 (1998). Additionally, "where . . . [an] order denying one party's motion for summary judgment simultaneously grants summary judgment to another party, such an order is final and appealable." *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 100, 576 S.E.2d 807, 827 (2002). Here, we find that the circuit court properly granted respondent's motion for summary judgment.

Rule 56(c) of the Rules of Civil Procedure provides that summary judgment shall be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." In Syllabus Point 1 of *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994), we held that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Pursuant to Syllabus Point 4 of *Painter*, "[s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of

Revised Uniform Partnership Act, West Virginia Code §§ 47B-1-1 to 47B-11-5, governs relations between the partners and the partnership. However, we find that these claims are, in actuality, only one claim, i.e., that a partnership existed between petitioner and respondent pursuant to West Virginia Code §§ 47B-1-1 to 47B-11-5.

the case that it has the burden to prove." *Id.* at 190, 451 S.E.2d at 756.

On appeal, petitioner raises seven assignments of error, yet concedes that the issues raised by the assignments of error overlap. Respondent argues that petitioner's assignments of error "run together" and create "confusion as to what exactly the issues are."

We agree with respondent that petitioner's assigned errors are redundant; we also find them to be, at times, difficult to understand. We, therefore, address what we have determined to be the essence of petitioner's arguments. *See Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (stating that "the assignments of error will be consolidated and discussed accordingly."); *State ex rel. Dillon v. Egnor*, 188 W. Va. 221, 227, 423 S.E.2d 624, 630 (1992) ("When a litigant chooses to represent himself, it is the duty of the trial court [and this Court] to insure fairness, allowing reasonable accommodations for the pro se litigant so long as no harm is done an adverse party[.]" (internal quotations and citations omitted)); *Franklin v. Pence*, 128 W. Va. 353, 356, 36 S.E.2d 505, 508 (1945) (recognizing that the assignments of error were general in nature making it "difficult to determine the exact points relied upon for reversal[,]" and causing the Court to rely upon "statements in the brief" that were "considered as indicating the main grounds of attack upon the judgment").

We agree with petitioner that the threshold issue is whether a partnership existed between the parties because petitioner's claim to the property rests upon his contention that partnership assets were used to finance the purchase of the property. Under the West Virginia Revised Uniform Partnership Act, West Virginia Code §§ 47B-1-1 to 47B-11-5 ("RUPA"), "a partnership is an association of two or more persons to carry on as co-owners a business for profit, whether or not the persons intend to form a partnership." Syl. Pt. 6, *Valentine v. Sugar Rock, Inc.*, 234 W. Va. 526, 766 S.E.2d 785 (2014) (citing W. Va. Code §§ 47B-1-1(7) and 47B-2-2(a)). In Syllabus Point 1 of *Pruitt v. Fetty*, 148 W. Va. 275, 134 S.E.2d 713 (1964), we held that

> [t]he question as to what constitutes a partnership depends upon all the facts and circumstances considered together in any given case and no one fact or circumstance can be used as a conclusive criterion. Where the evidence is conflicting as to whether a partnership exists, the question is one for jury determination under proper instructions of the court, but if the facts are undisputed or susceptible of only one inference, the question is one of law for the court.

Petitioner argues that, to establish the existence of a partnership, "[o]ur most recent cases have concentrated primarily upon the presence or absence of an agreement to share in the profits and losses of an enterprise." *Armor v. Lantz*, 207 W. Va. 672, 678-79, 535 S.E.2d 737, 743-44

(2000).[2] Petitioner further argues that, pursuant to the alleged oral agreement between the parties,[3] they did not expect to share profits as it was agreed that any profits would be used to make mortgage payments and for property maintenance. *See Valentine*, 234 W. Va. at 528, 766 S.E.2d at 787, syl. pt. 7 (holding that the RUPA "is a 'gap filler' in that it only governs partnership affairs when there is no partnership agreement, or to the extent a partnership agreement does not otherwise provide") (citation omitted).

However, petitioner fails to explain the lack of evidence with regard to losses. As the circuit court found, petitioner did not provide tax records or other documentation establishing that any losses were shared between the parties. As explained in *Salman Ranch Ltd. v. United States*, 573 F.3d 1362 (Fed. Cir. 2009),

> [a] partnership itself is not liable for the payment of income taxes. *See* I.R.C. § 701. However, each year a partnership must file an information return (IRS Form 1065) reporting items of gross income and allowable deductions. *See id.* § 6031(a). The tax treatment of a partnership item, which is "any item required to be taken into account for the partnership's taxable year," *id.* § 6231(a)(3), is determined at the partnership level. *See id.* § 6221. Partnership items then are allocated among the partners, who bear the tax consequences of them. *See id.* § 702. The allocation to each partner is reported on a Schedule K-1 to the partnership's Form 1065 return. Each partner must report his or her distributive share of the allocated partnership items. *See id.* Pursuant to I.R.C. § 6222(a), partners, on their individual returns, are required "to treat partnership items consistently with the item's treatment on the partnership information return." *Olson v. United States*, 172 F.3d 1311, 1316 (Fed. Cir. 1999).

*Id.* at 1364 n.4. Due to the tax implications—and petitioner's assertion that, in this case, the parties intended to become partners pursuant to an agreement—we concur with the circuit court's finding that the lack of an IRS Form 1065 or other tax documents "showing the sharing of profits and losses of the alleged partnership" meant that petitioner "failed to produce evidence sufficient that a reasonable jury may find that there was profit [and loss] sharing between the parties."

Pursuant to *Armor*, "[another] essential element of a partnership . . . is the right of joint participation in the management and control of the business." 207 W. Va. at 745, 535 S.E.2d at 737 (internal quotations and citations omitted). At his deposition, petitioner testified that he had no idea as to whether tax records were kept for the partnership. Petitioner further stated that

---

[2]The appellants in *Armor* alleged that the appellee was a member of a joint venture. 207 W. Va. at 677, 535 S.E.2d at 742. However, "[b]ecause of the basic similarities between these two forms of business association, joint ventures and partnerships are governed generally by the same basic legal principles." *Id.* at 678, 535 S.E.2d at 743.

[3] West Virginia Code §47B-1-1(8) defines "partnership agreement" to include oral agreements.

obtaining insurance and opening bank accounts on the partnership's behalf was respondent's responsibility. While petitioner argues that—pursuant to the parties' alleged agreement, respondent was responsible for the management of the property and petitioner was responsible for providing funding—there still has to be evidence sufficient for a reasonable jury to find that such an agreement and the resulting partnership existed. Such evidence is not found in the parties' conduct because, as petitioner admitted, respondent "r[a]n the business."

With regard to petitioner's argument that he provided respondent with funding pursuant to the alleged agreement, the circuit court found that, even if petitioner received profits earned from the property (in the form of payments by respondent), receipt of those profits did not make petitioner a partner pursuant to West Virginia Code § 47B-2-2(c)(3)(i) if those "profits were received in payment: . . . [o]f a debt by installments or otherwise." As we found in *Pruitt*, "[t]he mere fact that a person dealt with or loaned money to a partnership, or acted as a surety for a partnership, is not sufficient to make him a partner in the business." 148 W. Va. at 278, 134 S.E.2d at 716. Petitioner quibbles over labels, arguing that the payments made by him to respondent should be referred to as "investments" rather than "loans." However, in the absence of any evidence establishing a right to jointly control the business, "the mere fact that one party is to receive benefits . . . *for capital contribution* does not, as a matter of law, make him a partner." *Armor*, 207 W. Va. at 680, 535 S.E.2d at 745 (internal quotations and citations omitted, and emphasis added). Therefore, we concur in the circuit court's finding that petitioner failed to produce evidence sufficient to allow a reasonable jury to find that "he had any control or management authority regarding the subject property or alleged partnership." Accordingly, pursuant to Syllabus Point 4 of *Painter*, petitioner cannot make a sufficient showing as to the two elements required to show the existence of a partnership: (1) the sharing of profits and losses; and (2) the right to jointly control the business.

With regard to respondent's counterclaim, petitioner's claim to the property rests upon his contention that partnership assets were used to finance the purchase of the property. West Virginia Code § 47B-2-4(c) provides that "[p]*roperty is presumed to be partnership property if purchased with partnership assets*, even if not acquired in the name of the partnership or of one or more partners with an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership." (emphasis added). As explained above, petitioner cannot make a sufficient showing that a rational trier of fact would find in his favor as to the existence of a partnership. Therefore, the $3,000 petitioner provided to respondent to finance the property's purchase in 2001 did not constitute partnership assets, and, pursuant to *Pruitt*, the fact that petitioner made a loan to respondent is not sufficient to make him respondent's partner.

West Virginia Code § 36-1-11 provides, in pertinent part:

> When any real property is conveyed . . . to any person, and no words of limitation are used in the conveyance . . . , such conveyance . . . shall be construed to pass the fee simple, or the whole estate or interest, legal or equitable, which the testator or grantor had power to dispose of, in such real property, unless a contrary intention shall appear in the conveyance[.]

As it is undisputed that neither petitioner's name nor the alleged partnership's name appears on the 2001 or 2004 deeds, we concur with the circuit court's finding that "[t]he chain of title for the . . . property indicates that [respondent] is the sole deeded owner of the . . . property and that no partnership has ever been an owner of the . . . property."

Finally, petitioner argues that affidavits he submitted from himself, Joseph F. Rea, W. Mark Rea, Patrick Rea (another brother of the parties), and Jay A. Smith (petitioner's friend) were sufficient to create genuine issues of material fact as to the existence of the alleged partnership and the ownership of the property. However, based upon our review of the affidavits, we find that they were not sufficient to create genuine issues of material fact given the absence of petitioner's tax records regarding the alleged partnership[4] and petitioner's admissions that he had no management authority over either the alleged partnership or the property. Accordingly, we conclude that the circuit court properly granted respondent's motion for summary judgment on petitioner's claim that a partnership existed between the parties and on respondent's counterclaim that he was the sole owner of the property he purchased in 2001.[5]

For the foregoing reasons, we affirm the circuit court's November 4, 2020, order awarding summary judgment to respondent and the circuit court's March 22, 2021, order denying petitioner's motion to alter or amend the November 4, 2020, order.

Affirmed.

**ISSUED:** April 18, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment

---

[4]Such tax records should have existed because, according to petitioner, the parties intended to become partners in this case.

[5]To the extent that petitioner raises other issues, we do not address them herein because we find any such issues to be without arguable merit.